**Joseph Scott HUNTER, a/k/a Raymond C. Dirker, Petitioner–Appellant,**

v.

**Bernie AISPURO, Warden, Respondent–Appellee.**

No. 90–16398.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1991.

Opinion Filed March 12, 1992.

Opinion Withdrawn Oct. 29, 1992.

Decided Dec. 31, 1992.

Meredith J. Watts, San Francisco, CA, for petitioner-appellant.

Christopher J. Wei, Deputy Atty. Gen., San Francisco, CA, for respondent-appellee.

Before: CANBY and KOZINSKI, Circuit Judges, and NIELSEN, District Judge.*

WM. FREMMING NIELSEN, District Judge:

In an order filed on October 29, 1992, we granted appellant's petition for rehearing and withdrew our prior opinion. We now file this substitute opinion.

Joseph Scott Hunter appeals the denial of his petition for a writ of habeas corpus. He contends that the district court erroneously relied on the harmless error doctrine when rejecting his due process challenge to the state-imposed sentence. We affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

Joseph Scott · Hunter was indicted on eight counts for sexual offenses; three of the counts charged Hunter with committing forcible oral copulation. These three charges were based on incidents with two minors, Lorie D., age 12, and Michelle L., age 14.

At trial, both girls testified about the incident while Hunter asserted an alibi defense. The girls testified that after they accepted a ride with Hunter, he pulled out a gun which, unbeknownst to the girls, was unloaded. Hunter pointed the gun at Michelle's head and told her to do what he said and she would not get hurt. Hunter told the girls that earlier that day he had robbed a bank, had been wounded, and was not afraid to use the gun. Later, Hunter took some bullets out of his pocket, loaded the gun, put it under the driver's seat, and told the girls it would remain there.

The jury found him guilty on seven counts, including the three counts of committing forcible oral copulation, under California State Penal Code 288a(c). The jury specifically found that Hunter did not use a deadly and dangerous weapon. During deliberations, the jury required further instructions regarding the meaning of deadly and dangerous weapon.

In addition to the normal sentence under the penal code, Hunter was sentenced to consecutive terms of seven years on each of these counts via a sentencing statute, California State Penal Code section 667.-6(c). At the time Hunter committed the acts in question section 288a(c) of the Penal Code defined forcible oral copulation as committing the act "by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury"; while

---

* The Honorable Wm. Fremming Nielsen, United States District Judge, Eastern District of Washington, sitting by designation.

section 667.6(c) provided for additional consecutive sentences if the crimes were committed "by force, violence, duress, menace, or threat of great bodily harm." [1]

Hunter appealed his conviction and sentence on three separate occasions yet never raised the question of whether the linguistic discrepancies between California Penal Code sections 667.6(c) and 288a(c) denied him due process. The issue was first raised in his state petitions for a writ of habeas corpus. The petitions were denied without comment by both the California Court of Appeal and Supreme Court.

## II. DISCUSSION

### A. STANDARD OF REVIEW

This court reviews de novo a district court's decision on a petition for writ of habeas corpus. *Carter v. McCarthy*, 806 F.2d 1373, 1375 (9th Cir.1986), *cert. den.*, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987).

### B. PROCEDURAL DEFAULT

■ The government contends that Hunter's argument is procedurally barred from federal habeas review because he did not raise the issue properly on direct appeal. We disagree.

The government relies on the recent United States Supreme Court decision in *Coleman v. Thompson*, — U.S. —, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Prior to *Coleman*, the standard was that enunciated in *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), wherein the Court extended a presumption afforded direct appeal criminal cases to habeas corpus appeals. The presumption arises when there are two possible grounds for a state court's denial of habeas relief, one a federal question and the other an independent and adequate state procedural bar, and the order denying habeas relief does not clearly and expressly state that the state procedural bar is the basis of the denial. The *Harris* Court held that a federal court reviewing the state court's denial of habeas relief will presume the denial was based on

the federal question absent a clear statement to the contrary. *Id.* at 265, 109 S.Ct. at 1044. *Coleman* reexamined *Harris* and explained that "[a] predicate to the application of the *Harris* presumption is that the decision of the last state court ... must fairly appear to rest primarily on federal law or to be interwoven with federal law." *Coleman*, — U.S. at —, 111 S.Ct. at 2557.

In *Coleman*, the petitioner had filed a petition for a writ of habeas corpus in state court raising federal constitutional claims that he had not raised on direct appeal. The state court ruled against him on all claims. Coleman appealed but was three days late in filing his notice of appeal. The state filed a motion to dismiss the appeal based on the late filing, and the state supreme court granted the motion and dismissed the appeal virtually without comment. *Id.*, — U.S. at — —, 111 S.Ct. at 2552–53. In holding that the state supreme court's dismissal did not fairly appear to rest primarily on federal law or to be interwoven with federal law, the United States Supreme Court noted that:

> The Virginia Supreme Court stated plainly that it was granting the Commonwealth's motion to dismiss the petition for appeal. That motion was based solely on Coleman's failure to meet the Supreme Court's time requirements. There is no mention of federal law in the Virginia Supreme Court's three-sentence dismissal order. It "fairly appears" to rest primarily on state law.

*Id.*, — U.S. at —, 111 S.Ct. at 2559.

Here, Hunter did not raise his federal constitutional claims on direct appeal, but raised them in an original habeas petition filed in the California Court of Appeal. The state filed an opposition, arguing both the merits and invoking the rule, which exists in California as elsewhere, that failure to raise an issue on direct appeal amounts to a waiver thereof. *See In re*

---

**1.** This discrepancy between section 288a(c) and 667.6(c) existed from 1980 to 1985 because of an apparent oversight by the California legislature:

when it changed the language of section 288a(c) in 1980, it did not change the corresponding language of section 667.6(c).

*Sterling,* 63 Cal.2d 486, 488, 407 P.2d 5, 7, 47 Cal.Rptr. 205, 207 (1966). The state court of appeal stated only: "The petition for writ of habeas corpus is denied." Hunter then raised his federal claims in an original habeas petition filed in the California Supreme Court. The state supreme court similarly stated: "Petition for writ of habeas corpus DENIED."

The state courts' terse dismissals of the habeas petitions do not disclose whether they were based on state or federal law. Certainly the *pro forma* orders do not "fairly appear[ ] to rest primarily on federal law, or to be interwoven with the federal law." *Coleman,* —— U.S. at ——, 111 S.Ct. at 2557 (quoting *Michigan v. Long,* 463 U.S. 1032, 1040, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983)). Therefore, the necessary federal law predicate is missing and the *Harris* presumption of a reviewable federal issue does not apply.

■ We also are unable to employ the presumption set forth in *Ylst v. Nunnemaker,* —— U.S. ——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). There the Court held that "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground." *Id.,* —— U.S. at ——, 111 S.Ct. at 2594. Here, Hunter can point to no reasoned decision rejecting the federal claim that he pursues in this court.

■ The unavailability of the *Harris v. Reed* or *Ylst v. Nunnemaker* presumption does not end our inquiry, however. Absent a presumption, "federal habeas courts must ascertain for themselves if the petitioner is in custody pursuant to a state court judgment that rests on independent and adequate state grounds." *Coleman,* —— U.S. at ——, 111 S.Ct. at 2558; *see also id.,* —— U.S. at ——, 111 S.Ct. at 2559 ("It remains the duty of the federal courts ... to determine the scope of the relevant state court judgment."); *Ylst,* —— U.S. at ——, 111 S.Ct. at 2594 (*Harris* presumption does not apply to an unexplained state court order; nevertheless, federal court in habe-

as proceedings must determine the basis for the order); *Harris v. Reed,* 489 U.S. at 261–62, 109 S.Ct. at 1042 ("the mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim: '[T]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case.' ") (quoting *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985)). Accordingly, we must determine whether the California Supreme Court actually relied on the procedural bar in denying Hunter's habeas petition.

The United States Supreme Court has acknowledged that discerning the basis of an unexplained state court order is not an easy task. *Ylst,* —— U.S. at ——, 111 S.Ct. at 2594. The Court noted that:

> In *Coleman* itself, although the order was unexplained, the nature of the disposition ("dismissed" rather than "denied") and surrounding circumstances (in particular the fact that the state had rested its argument entirely upon a procedural bar), indicated that the basis was procedural default.

*Id.; see also Coleman,* —— U.S. at ——, 111 S.Ct. at 2559. Here, no such clues exist regarding the basis of the California Supreme Court's order denying Hunter's petition; the court "denied" Hunter's petition, and the state in its opposition argued both the merits and the procedural bar.

Nevertheless, the California Supreme Court in issuing its bare order had good reason to know the effect it would be given in federal court. We had visited the issue in *Harris v. Superior Court,* 500 F.2d 1124, 1127–29 (9th Cir.1974) (en banc), *cert. denied,* 420 U.S. 973, 95 S.Ct. 1394, 43 L.Ed.2d 652 (1975). There, we reviewed the California Supreme Court's practices in disposing of original habeas petitions in an effort to determine what the state court meant when it entered an unexplained denial of a habeas petition. *Harris* held that the California Supreme Court's denial of a habeas petition without comment or citation constituted a decision on the merits of

the federal claims, and thus such claims would be subject to review in federal habeas proceedings. *Id.* at 1228–29.[2] In contrast, if the California Supreme Court included a citation to state authority indicating that the habeas petition was procedurally deficient, the order did not represent a decision on the merits. *Id.* at 1128; *see also LaRue v. McCarthy,* 833 F.2d 140, 143 (9th Cir.1987) ("We find nothing to suggest that the practice of the California Supreme Court has changed since our decision in *Harris.*")

Our decision in *Harris v. Superior Court* has been in place for nearly two decades, and the California Supreme Court has never indicated disagreement with *Harris* s interpretation of that Court's orders. The California Supreme Court has continued its practice of denying some petitions for habeas corpus with a citation to state authority denoting a particular state procedural ground, while citing no authority in a larger number of denials. Against the background of *Harris v. Superior Court* and this continued practice of the California Supreme Court, we conclude that the California Supreme Court's summary order denying Hunter's petition was a denial on the merits of Hunter's constitutional claims, and not a denial on a state procedural ground.

■ Our conclusion also is supported by the fact that "sometimes the members of the court issuing an unexplained order will not themselves have agreed upon its rationale, so that the basis of the decision is not merely undiscoverable but nonexistent." *Ylst,* —— U.S. at ——, 111 S.Ct. at 2594. In such a case, the state court has not rested its decision on a state procedural ground, and federal habeas review therefore is not barred. *See Coleman,* —— U.S. at ——, 111 S.Ct. at 2554 (federal habeas review is barred "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement[;] [i]n these cases, the state judgment rests on independent and adequate state procedural grounds");

*Harris v. Reed,* 489 U.S. at 262, 109 S.Ct. at 1042–43 (same).

Accordingly, the California Supreme Court's unexplained denial of Hunter's habeas corpus petition cannot be said to rest on independent and adequate state procedural grounds. We conclude therefore, that federal review of the merits of Hunter's habeas petition is not barred by his failure to raise his constitutional claims on direct appeal.

## C. DUE PROCESS CHALLENGE

■ In a constitutional due process challenge, we apply a harmless error analysis as found in *Rose v. Clark,* 478 U.S. 570, 578–79, 106 S.Ct. 3101, 3106–07, 92 L.Ed.2d 460 (1986). Under *Rose,* "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis.... Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed." *Id.,* 478 U.S. at 579, 106 S.Ct. at 3106. We find Hunter's claimed due process error to be harmless.

■ Hunter claims the jury based his convictions for forcible oral copulation on a finding of fear of immediate and unlawful bodily injury under California State Penal Code section 288a(c), a lesser standard than the threat of great bodily injury found in California State Penal Code section 667.-6(c), the sentencing enhancement statute. He asserts, therefore, that the court's additional consecutive sentences were not authorized by the enhancement statute, are in excess of that authorized by state law, and thus denied him due process of the law. The government claims that the failure of the jury to return a special finding regarding oral copulation by means of threats of great bodily harm is harmless error.

---

**2.** Although *Harris v. Superior Court* considered whether an unexplained order satisfied the exhaustion requirement, we also have applied its rule to procedural default cases. *See, e.g., Lewis v. Borg,* 879 F.2d 697, 698 (9th Cir.1989) (per curiam).

As we noted above, the discrepancy between section 288a(c) and section 667.6(c) existed only between 1980 and 1985. The California courts have on many occasions addressed the problem we confront here: a defendant convicted under section 288a(c) and sentenced under 667.6(c) even though the jury did not return a separate finding as to violation of section 667.6(c).

Early California cases held that at sentencing the judge could not invade the province of the jury by determining the factual issue of the degree of force utilized by a felon convicted under section 288a. *See People v. Riffey,* 171 Cal.App.3d 419, 422–23, 217 Cal.Rptr. 319 (1985); *People v. Foley,* 170 Cal.App.3d 1039, 216 Cal.Rptr. 865 (1985); *People v. Reyes,* 153 Cal.App.3d 803, 200 Cal.Rptr. 651 (1984). However later cases used a harmless error analysis, finding that "[w]here it is clear from the evidence and jury findings that the jury could only have found that the offenses were committed by force or fear of great bodily harm, we would hold the error harmless and would not preclude sentencing under section 667.6, subdivision (c)." *People v. Ramirez,* 189 Cal.App.3d 603, 632–33, 236 Cal.Rptr. 404, 424 (1987); *see also People v. Moore,* 211 Cal.App.3d 1400, 1416–20, 260 Cal.Rptr. 134, 147 (1989); *People v. Flores,* 193 Cal.App.3d 915, 918–21, 238 Cal.Rptr. 656, 657–58 (1987); *People v. White,* 188 Cal.App.3d 1128, 1135–37, 233 Cal.Rptr. 772, 777–78 (1987).

Hunter admits on appeal that the basic facts are not in dispute. Evidence at trial revealed that Hunter picked up the young victims and drove them to a secluded spot. He pointed the gun, albeit unloaded, at the head of one of the girls and told her he and others had robbed a bank earlier in the day, resulting in several people, including himself, being shot. He stated that he had used the gun and was not afraid to use it again, but if she did what he said, she would not get hurt. He then loaded the gun and placed it under the car seat. He forced the victims to perform the sexual acts for which he is charged. The victims testified that they were afraid of Hunter "because he was big" and "because he had a gun." Although he did not directly use the gun while performing the acts, a rea-sonable jury could only find that the presence of the gun combined with all the other circumstances constituted a threat of great bodily harm to the victims. Thus, had the jury been properly informed of the differing standards in the statutes, the result would have been the same; the error therefore was harmless beyond a reasonable doubt. *See Rose,* 478 U.S. at 579, 106 S.Ct. at 3106–07; *White,* 188 Cal.App.3d at 1137, 233 Cal.Rptr. at 778 ("if the evidence presented ... would show any statements made by the defendant constituted threats of great bodily harm as a matter of law with no evidence worth any consideration to the contrary, any error in failing to request a specific finding from the jury would be harmless beyond a reasonable doubt").

Hunter points out that the jury found that the gun was not capable of being used to inflict great bodily injury, presumably because it found that the gun was not loaded. But that finding is irrelevant to the question whether Hunter used the gun to *threaten* great bodily harm.

### III. CONCLUSION

We conclude that the California Supreme Court's denial of Hunter's petition does not procedurally bar review of his constitutional claims in a federal court habeas corpus proceeding. However, any error which occurred during his trial was harmless beyond a reasonable doubt and therefore his habeas corpus petition must be denied.

Judgment affirmed.