William B. GREENE, Petitioner–Appellee,

v.

John LAMBERT, Respondent–Appellant.

No. 01–35595.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 6, 2001.*

Filed March 26, 2002.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.

R.App. P. 34(a)(2).

1082

Paul D. Weisser, Senior Counsel, Criminal Justice Division, Olympia, WA, for the respondent-appellant.

William B. Greene, pro se, Walla Walla, WA, petitioner-appellee.

Before O'SCANNLAIN, GRABER, and McKEOWN, Circuit Judges.

## OPINION

GRABER, Circuit Judge.

In this unusual case, a state trial court forbade a defendant's testimony about his own state of mind and forbade testimony from the victim—his therapist—about what she observed of his state of mind. The state trial court acted on the basis of its interpretation of state rules of evidence and its conclusion that the mental disease about which the defendant and the victim would testify—Dissociative Identity Disorder (DID), formerly referred to as Multiple Personality Disorder (MPD)—was a questionable diagnosis and, at all events, had no relevance to the defendant's sanity or knowledge at the time of the crime. In the context of this subsequent federal habeas petition, we are called on to decide two questions: (1) whether the Washington Supreme Court's response to a motion to reconsider its opinion was an adjudication on the merits of a newly raised Sixth Amendment claim, which would permit us to address it, 28 U.S.C. § 2254(b), (c); and (2) if so, whether the Washington Supreme Court's decision involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, 28 U.S.C. § 2254(d)(1). We hold that (1) the Washington Supreme Court adjudicated the merits of the Sixth Amendment claim and (2) the court unreasonably applied federal constitutional principles that were clearly established by the United States Supreme Court. Accordingly, we affirm the district court's order granting the petition for a writ of habeas corpus.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1988, Petitioner William B. Greene pleaded guilty to a charge of indecent liberties, in violation of Washington Revised Code § 9A.44.100. He was incarcerated in a Washington state correctional facility and entered a sex-offender treatment program there. During treatment, Petitioner complained of hearing voices. His therapist suspected a dissociative disorder and ultimately diagnosed DID. An independent private medical provider who specialized in DID confirmed the diagnosis. Petitioner manifested at least 24 separate personalities or "alters," which had different ages, sexes, and races.

During Petitioner's incarceration, a psychiatric nurse served as his main therapist. Petitioner continued therapy with her twice a week, voluntarily, after his release from prison in November 1992. Although his condition remained stable for about a year, it began to deteriorate thereafter. The therapist instructed Petitioner to call her every day because she thought that he was depressed and might try to commit suicide. After their conversation on April 29, 1994, the therapist became alarmed about Petitioner's mental condition and decided to go to his apartment to evaluate him for possible hospitalization. When she arrived, Petitioner became agitated. He refused to allow the therapist to leave. He forcibly removed her clothes and sexually assaulted her. The lengthy sexual assault consisted in large part of ritual sucking of the victim's breasts; Petitioner did not achieve an erection. After the assault ended, Petitioner bound and gagged his therapist and drove away in her car. The therapist freed herself and called the police, who arrested Petitioner.

As a result of those events, Petitioner was charged with first-degree kidnapping, in violation of Washington Revised Code § 9A.40.020(1)(b), and indecent liberties. He pleaded not guilty by reason of insanity. He asserted that he suffered from DID and that the alter in control of his body during the incident involving the

therapist was incapable of understanding the nature or wrongfulness of his acts. In an offer of proof the therapist testified that "Tyrone," a child less than seven years old, was the alter who perpetrated the assault. At a pre-trial hearing, Petitioner and the state presented contradictory experts concerning DID.

The state trial court refused to allow Petitioner's insanity defense, as well as a defense of diminished capacity. The court said that there was "no discernible standard to justify a diagnosis of MPD/DID in questionable cases" and "no consensus on a forensic diagnosis concerning insanity by reason of MPD/DID." Accordingly, the court held that the DID—related defenses would not be helpful to the trier of fact and were inadmissible under Washington Rule of Evidence 702.[1] The state's motion, which the trial court granted, was to "preclude any mention of the disorder in the case"; "[a]nd my motion would go to encompass statements made by the defendant during the defense," as well as "any observation by [the therapist] that it was Tyrone."

A jury convicted Petitioner of both counts: kidnapping and indecent liberties. Because of Petitioner's two earlier felony convictions, the judge sentenced him to concurrent terms of life in prison under Washington's "three-strikes" law, Wash. Rev.Code Ann. § 9.94A.120(4) (West 1988) (recodified as § 9.94A.505(2)(a) (West 2001)).

Petitioner appealed to the Washington Court of Appeals, which reversed his conviction. *State v. Greene*, 92 Wash.App. 80, 960 P.2d 980, 982 (1998). That court held that the trial court erred when it found that DID was not generally accepted in

the scientific community and that the trial court abused its discretion when it ruled that DID evidence would not have assisted the jury. Expert testimony was reliable, and it would be relevant to establish either insanity or diminished capacity. *Id.* at 997.

The state petitioned for review. On review, the Washington Supreme Court reinstated the conviction. *State v. Greene*, 139 Wash.2d 64, 984 P.2d 1024, 1025 (1999). The Washington Supreme Court agreed with the Court of Appeals that DID was generally accepted in the scientific community. 984 P.2d at 1028. The Supreme Court held, however, that the evidence was not admissible in Petitioner's case because it would not have been helpful to the trier of fact. *Id.* at 1031.

Petitioner filed a motion for reconsideration, in which he raised for the first time a federal constitutional claim: that the trial court's rulings precluding his defenses based on DID violated his Sixth Amendment rights. In response, the Washington Supreme Court sent a letter stating that "[t]he motion will be considered by the Court." Thereafter the Court amended its opinion by adding the following footnote:

Greene presents no new argument for finding the Persistent Offender Accountability Act [POAA] unconstitutional. Therefore, we decline his invitation to overturn our previous determination that the POAA is constitutional. *He also argues that denying him the right to present evidence of DID to the jury denies him the right to present a defense. Since we decide this case on more narrow grounds, we do not reach this issue.*

---

1. Washington Rule of Evidence 702 is the same as Federal Rule of Evidence 702:

 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a

fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

139 Wash.2d at 79 n. 5, 984 P.2d 1024 (emphasis added). Having made that change, the court denied the motion for reconsideration.

Petitioner unsuccessfully sought certiorari in the Supreme Court of the United States. *Greene v. Washington,* 529 U.S. 1090, 120 S.Ct. 1726, 146 L.Ed.2d 647 (2000). Then he filed a petition for a writ of habeas corpus in the district court for the Western District of Washington. As pertinent, the petition alleged violations of the "right to present a trial defense," the right "to defend against the state's accusations," and the right "to testify in my own behalf."

Initially, the district court dismissed the petition with leave to amend by striking one unexhausted claim and, after it was stricken, the court granted the amended petition. The court held, with respect to the DID claims, that they were exhausted in state court and were meritorious. The district court emphasized that the restriction on DID evidence was disproportionate, especially in the light of the Washington Supreme Court's decision that the disorder was a generally accepted medical condition. *Citing Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), and *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the district court concluded that Petitioner's clearly established constitutional rights had been violated by the preclusion of DID evidence.

The state filed this timely appeal.

## EXHAUSTION

■ The state first argues that Petitioner's Sixth Amendment claim is not properly brought to federal court because Petitioner failed to exhaust his state remedies. We review de novo whether a petitioner has exhausted state remedies. *Harris v. Pulley,* 885 F.2d 1354, 1370 (9th Cir.1988). Although the question is close, we are persuaded that the Washington Supreme Court considered this claim.

■ Undeniably, a state prisoner must exhaust a federal constitutional claim in state court before a federal court may consider the claim. 28 U.S.C. § 2254(b)(1)(A), (c). Exhaustion typically requires that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). However, exhaustion does not require repeated assertions if a federal claim is actually considered at least once on the merits by the highest state court. *Castille v. Peoples,* 489 U.S. 346, 350, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) (citing *Brown v. Allen,* 344 U.S. 443, 447, 73 S.Ct. 397, 97 L.Ed. 469 (1953)). Also undeniably, Petitioner did not bring his Sixth Amendment claim to the attention of the state courts until he filed his motion for reconsideration in the Washington Supreme Court. Our decision hinges on what happened to his motion. If the Washington Supreme Court declined to apply the procedural bar that was available to it and adjudicated the claim on the merits, then the claim may proceed. *See Castille,* 489 U.S. at 351, 109 S.Ct. 1056 (recognizing exception to exhaustion where the state has actually passed on the claim).

■ When it ruled on Petitioner's motion to reconsider, the court neither dismissed nor denied it—even though it could have. Customarily, the Washington Supreme Court does not address issues raised for the first time on appeal. There is no right to an appeal to that court; all review is discretionary. Wash. R.App. P. 13.1(a). If review is granted, the court generally limits its consideration to issues presented in the Petition for Review and the Answer. Wash. R.App. P. 13.7(b).

Petitioner presented his federal arguments for the first time in a motion for reconsideration, essentially a second round of discretionary review. A party makes a motion for reconsideration to advise the court of "points of law or fact which the moving party contends the court has overlooked or misapprehended." Wash. R.App. P. 12.4(c). Because Petitioner's federal claims were raised for the first time in this context, the Washington Supreme Court would have been within its discretion simply to deny the motion or to dismiss it without comment.[2]

■ Instead, the court amended its opinion in response to the motion. To be sure, the amendment is cryptic; the court said only that it need not address the Sixth Amendment issue because it decided the case on "more narrow grounds." *Greene*, 139 Wash.2d at 79 n. 5, 984 P.2d 1024. In context that comment is most naturally understood as saying that (1) the court had thought about the new federal claim but (2) the court had resolved not to revise its opinion, because the application of a state evidentiary rule to a situation in which proposed testimony would not assist the trier of fact was a sufficient basis for decision even in the face of a Sixth Amendment challenge.

ment challenge. At least, the Washington Supreme Court's footnote cannot be fairly characterized as merely procedural. The court understood the nature of the claim and took pains to respond to it, albeit curtly and ambiguously.

*Harris v. Superior Court*, 500 F.2d 1124 (9th Cir.1974) (en banc), guides our resolution of an ambiguity of this kind. Harris involved a so-called "postcard denial" from the California Supreme Court. We held in that case that the state court's denial of a habeas petition on procedural grounds did not exhaust state remedies, but (citing *Brown*, 344 U.S. at 449 n. 3, 73 S.Ct. 397) that the state court's denial of a habeas petition on the merits did exhaust state remedies. *Harris*, 500 F.2d at 1128–29. We construed a bare postcard denial from the California Supreme Court as a decision on the merits, for purposes of the exhaustion requirement, unless that court expressly relied on a procedural bar. *Id.*[3] In other words, although the state supreme court's response was ambiguous, we adopted a plausible construction that it acted on the merits of a claim presented to it. We have not overruled Harris. *See, e.g., Hunter v. Aispuro*, 982 F.2d 344, 348 n. 2 (9th Cir.1992).[4]

2. Such a dismissal would have brought Petitioner's claim squarely within the reach of *Castille*, 489 U.S. at 351, 109 S.Ct. 1056 (holding that issues raised for the first time in purely discretionary motions are not exhausted for federal habeas purposes when those motions are dismissed without comment).

3. *Hunter* applied the *Harris* rule in the context of procedural default. *Hunter v. Aispuro*, 982 F.2d 344, 348 n. 2 (9th Cir.1992). The United States Supreme Court has described the doctrines of exhaustion and procedural default as "inseparab[le]." *Edwards v. Carpenter*, 529 U.S. 446, 452–53, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (discussing the relationship and interplay between the doctrines of exhaustion and procedural default).

4. *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), is not to the contrary. There, in the context of procedural default, the Court recognized a presumption in favor of federal habeas jurisdiction when a state court's decision is ambiguous; unless the state court clearly and expressly relies on an independent and adequate state ground, a federal court may address the merits of the habeas petition. *Id.* at 735. The Court held that there is no presumption of federal habeas jurisdiction *if the petitioner in fact failed to exhaust state remedies, id.* at 735 n. 1, 111 S.Ct. 2546, but the Court did not offer a test to help us decide whether the petitioner exhausted state remedies.

Nor does *Castille* answer the question here. That case involved a state court's rejection *without comment* of a new claim in an

In this case, even more than in Harris, it is appropriate to construe the state court's response as having been made on the merits. The Washington Supreme Court did more than issue a form postcard denial. It withdrew and then amended its opinion, and the court had an available procedural bar but did not cite it.

■ In summary, the state court procedure in the present case fulfilled the letter of the exhaustion requirement. Moreover, the procedure satisfied the purpose of the exhaustion requirement. The United States Supreme Court has long recognized that the main purpose of exhaustion is to protect principles of comity between state and federal courts. *Ex parte Royall,* 117 U.S. 241, 252–53, 6 S.Ct. 734, 29 L.Ed. 868 (1886). Because state courts and federal courts equally are charged with protecting federal rights, state courts should have an opportunity to protect those federal rights before a federal court intervenes. *Vasquez v. Hillery,* 474 U.S. 254, 257, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986). When the Washington Supreme Court here actually passed on the merits, it took its opportunity to address the federal claim.

## SIXTH AMENDMENT CLAIM

On the merits, the state challenges the district court's resolution of Petitioner's claim. Petitioner asserts that the state court's rejection of his Sixth Amendment argument failed "to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey,* 212 F.3d 1143, 1150 (9th Cir.), *cert. denied,* 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000); *see also* 28 U.S.C. § 2254(d)(1). The district court agreed with Petitioner, holding that the

extraordinary motion, 489 U.S. at 347, 109 S.Ct. 1056, whereas the present case involves a state court's rejection of such a claim with an ambiguous comment. Because the question was not presented in

Washington Supreme Court's opinion was an unreasonable application of the United States Supreme Court's precedents. We will address, first, the degree of deference owed to the Washington Supreme Court and, second, the substantive arguments.

### A. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, defines our standard of review in this case. AEDPA limits our review to the state court's *decision,* which is ordinarily entitled to deference. 28 U.S.C. § 2254(d). Limiting federal review to the state court's decision altered the standard of review for habeas petitions. Federal courts previously treated the petition as a wholly new complaint and looked to the state court's decision as relevant but noncontrolling authority. *See Williams v. Taylor,* 529 U.S. 362, 403–04, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (discussing AEDPA's changes to federal court review of state court decisions).

■ But the standard of review under AEDPA is somewhat different where, as here, the state court gives no reasoned explanation for its decision on a petitioner's federal claim. In *Delgado v. Lewis,* 223 F.3d 976, 981–82 (9th Cir.2000), we held that in such a case a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *See also Bailey v. Newland,* 263 F.3d 1022, 1028 (9th Cir. 2001) (following *Delgado* and conducting an "independent review of the record" in a case where the state court offered no reason for its decision).

*Castille,*that decision does not tell us whether to read an ambiguous state court comment to favor or disfavor federal habeas jurisdiction.

As *Delgado* recognized, *Williams* did not address a situation like Petitioner's, in which the state court in adjudicating the merits of Petitioner's federal claim provided no reason for its decision on the federal claim. However, the text of AEDPA supports *Delgado*'s conclusion that an independent review of the record is necessary:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted *with respect to any claim* that was *adjudicated on the merits in State court proceedings unless the adjudication of the claim—*

(1) *resulted in a decision* that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1) (emphasis added).

 In other words, there are four prerequisites to AEDPA deference: A claim must be (1) adjudicated (2) on the merits (3) in a state court proceeding (4) that resulted in a decision. *See* James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 30.2b, at 1237–38 (3d ed.1998). A state court's decision on the merits concerning a question of law is, and should be, afforded respect. If there is no such decision on the merits, however, there is nothing to which to defer.

 The Washington Supreme Court, in its footnote, has presented us with precisely that kind of situation here. We have an adjudication on the merits without a reason for the decision. In the circumstances, we must review the complete record to determine whether habeas relief was properly granted. Our review of the district court's grant of the petition is de novo. *See Paradis v. Arave,* 240 F.3d 1169, 1175 (9th Cir.2001) (stating that we review de novo the grant of a petition under 28 U.S.C. § 2254).

**B.** *Unreasonable Application of Clearly Established Federal Law*

 Our standard of review does not change the rule of decision. "[W]hile we are not required to defer to a state court's decision when that court gives us nothing to defer to, we must still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law." *Fisher v. Roe,* 263 F.3d 906, 914 (9th Cir. 2001). The federal issue here is the degree to which a trial court's evidentiary rulings can abridge the testimony of a percipient witness and the testimony of the criminal defendant himself without running afoul of Sixth Amendment protections.

 In Petitioner's case, the evidentiary rulings at issue concerned proffered defenses of insanity and diminished capacity. Under Washington law, those defenses require that a defendant connect the claimed mental illness with the defendant's capacity to understand the nature and quality of the acts committed, or with the defendant's ability to tell right from wrong. *See State v. Box,* 109 Wash.2d 320, 745 P.2d 23, 25 (1987) ("In Washington ... to prove that he is legally insane ... the defendant must prove that at the time of the offense he or she was unable to perceive the nature and quality of the act charged or was unable to tell right from wrong with regard to that act."); *State v. Edmon,* 28 Wash.App. 98, 621 P.2d 1310, 1313–14 (1981) (listing factors required to present expert on diminished capacity). Defendants generally establish that connection through expert testimony. *Id.* at 1314.

Initially, Petitioner asserted an insanity defense. To establish the required connection, Petitioner offered an expert: Dr. Robert B. Olsen. The trial court held a

*Frye* [5] hearing to decide two issues: First, had the scientific community "generally accepted" DID and, second, would expert testimony about DID assist the jury? Olsen was able to testify about the sanity of particular "alters," but not about the sanity of Petitioner's "personality system" as a whole. The trial court decided that DID was not a generally accepted diagnosis *and* that expert testimony would not be helpful to the trier of fact. The trial court initially limited its ruling to the expert testimony about the condition.

On the first day of trial, the prosecutor moved to extend this ruling to restrict *all* evidence of DID. Specifically, the prosecutor asked the trial court to preclude any testimony about DID from the victim, Petitioner's psychiatric nurse. The state argued that DID testimony could be relevant only to a defense of diminished capacity. Because the trial court already had decided that expert testimony would not be admitted, the state argued that Petitioner would not be able to establish the required connection to prove diminished capacity. The trial court agreed and precluded *all* testimony about DID from *any* witness, including the victim and Petitioner himself.

 "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (citations omitted) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). However, that right is not unlimited. "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding

evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)) (emphasis added). "In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, [evidentiary rules] may not be applied mechanistically to defeat the ends of justice." *Chambers*, 410 U.S. at 302, 93 S.Ct. 1038. The Supreme Court has "found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308, 118 S.Ct. 1261.

 Two Supreme Court cases persuade us that the state trial court's preclusion of DID evidence disproportionately infringed upon weighty interests in this case: *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), and *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). We will discuss the relevance of each case in turn.

In *Washington v. Texas*, the Supreme Court addressed Texas' evidentiary rule that precluded co-defendants from testifying on behalf of one another. The Court held that the Sixth Amendment forbade such a preclusion because the defendant was "denied ... the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed." 388 U.S. at 23, 87 S.Ct. 1920. The defendant's right to present that witness' relevant and material testimony outweighed the state's

---

**5.** *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923), sets the standard for admissibility of scientific evidence in Washington.

*State v. Copeland*, 130 Wash.2d 244, 922 P.2d 1304, 1315 (1996).

interest in preventing the admission of perjured or unreliable testimony.

Similarly, here, the victim herself was not allowed to testify as to which "alter" attacked her. She was uniquely qualified to do so because she had treated Petitioner for more than two years. Indeed, she used many techniques from therapy to communicate with Petitioner's various alters during the assault. However, on the stand, the trial court restricted her testimony to Petitioner's bare conduct. The trial court barred her insights into what alters actually took those actions.[6]

We agree with the district court that the extension of the trial court's ruling on DID evidence to the victim's testimony was unconstitutionally disproportionate to the state's interest in preventing unreliable or confusing scientific testimony. In the extremely unusual circumstances of this case, precluding the victim's own insights into Petitioner's condition ultimately denied Petitioner the right to put a witness on the stand who was "physically and mentally capable of testifying to events that [she] had personally observed." *Washington*, 388 U.S. at 23, 87 S.Ct. 1920.

The trial court's restriction of all DID evidence also unconstitutionally restricted Petitioner's own testimony. In *Rock v. Arkansas,* the Supreme Court addressed a similar situation. In that case, the defendant's memory had been refreshed hypnotically. The trial court limited the defen-

dant's testimony to events that took place *before* she was hypnotized. 483 U.S. at 47, 107 S.Ct. 2704. Arkansas' highest court upheld this ruling and banned all hypnotically refreshed testimony as unreliable. *Id.* at 48–49, 107 S.Ct. 2704. The Supreme Court held that this per se limitation on a defendant's testimony was unconstitutional, because the defendant's fundamental right to testify took precedence over the state's interest in barring unreliable evidence. *Id.* at 62, 107 S.Ct. 2704. *Rock* emphasized that cross-examination could root out inconsistencies in testimony that had been enhanced hypnotically.

In Petitioner's case, the state's interest in preventing unreliable or confusing scientific testimony is akin to Arkansas' interest in barring hypnotically refreshed testimony. Both broad preclusions legitimately serve to admit only reliable evidence. However, as in *Rock*, the trial court's broad preclusion of all DID evidence here impermissibly curtailed Petitioner's right to tell his own story. Petitioner could not describe his state of mind at the time of the attack without referring at least in passing to the condition.

The Supreme Court's most recent analysis of *Washington* and *Rock* further persuades us that the district court correctly granted the writ. In *Scheffer*, the Court revisited the issue of balancing the defendant's right to present a defense against the state's right to prevent unreliable evi-

---

6. The victim was unusually qualified to assess Petitioner's psychiatric condition and uniquely able to perceive shifts in personality control that might have seemed only peculiar to someone unfamiliar with Petitioner's illness. The victim was prepared to testify on Petitioner's behalf. As she wrote in a Victim Statement presented at Petitioner's sentencing:

> During the trial, the court would not permit any testimony related to Mr. Greene's mental condition. Because his Dissociative Disorder was so integral to the assault I felt I was not allowed to tell the whole truth even

> though I was sworn to do so. ... Not being able to testify regarding my knowledge of Mr. Greene's condition and my observations of his disintegration at the time of the assault made me feel devalued. I felt that my experience as the victim[] was denigrated by the state's refusal to permit me to testify fully and truthfully ... I do not feel that justice was served by the suppression of the mental health evidence that was a major component of the assault against me.

dence. *Scheffer* held that a per se ban on polygraph evidence did not constrain unconstitutionally a defendant's right to present exculpatory evidence. 523 U.S. at 317, 118 S.Ct. 1261. *Scheffer* distinguished *Washington* and *Rock*. The Court noted that the exclusions of evidence in those cases "significantly undermined fundamental elements of the defendant's defense." *Id.* at 315, 118 S.Ct. 1261. Specifically, *Scheffer* held that barring the admission of an allegedly exculpatory polygraph test did not do so, *id.* at 309, 118 S.Ct. 1261, and it contrasted the polygraph limitation with the preclusions on the testimony of a percipient witness and the testimony of the defendant, respectively, in *Washington* and *Rock*, *id.* at 315–16, 118 S.Ct. 1261. The distinction between *Washington*, *Rock*, and this case, on the one hand, and *Scheffer*, on the other, is this: In the former, a trial court prohibited presentation of *the substantive content* of a defendant's testimony or a percipient witness' testimony, *id.* at 315, 118 S.Ct. 1261, while in the latter a trial court prohibited something much less direct, and much more within the jury's province—third-party evidence of *the truthfulness of* the *substantive content* of the defendant's testimony, *id.* at 315–16, 118 S.Ct. 1261. Because we deal here with exactly the "weighty interest[s ] of the accused" that were described in Washington and *Rock*, our decision is in accord with *Scheffer*. *Id.* at 308, 118 S.Ct. 1261.

■ Of course, under our standard of review, it is not enough that the state court applied federal law, as announced by the Supreme Court, incorrectly—its application of federal law also must be unreasonable. 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 411, 120 S.Ct. 1495. In making that determination, we must review the application of federal law to determine if, on the whole, the result was objectively unreasonable. *Id.* at 409–10, 120 S.Ct. 1495. Our review of the whole record leaves us with the "definite and firm conviction" that an error has occurred. *Van Tran*, 212 F.3d at 1153 (citation and internal quotation marks omitted).

■ The Washington Supreme Court determined as a matter of state evidentiary law that DID is a generally accepted diagnosis in the relevant scientific community, which can form the basis for a defense in a criminal case. *Greene*, 984 P.2d at 1028–29, 1031. The only remaining question is whether this defendant had a right to present evidence of the condition in *this* case. The Washington Supreme Court held that, in Petitioner's case, DID evidence would not assist the trier of fact. *Id.* at 1029, 984 P.2d 1024.

The Washington Supreme Court based its ruling on the expert's inability to address the sanity of Petitioner's personality system as a whole, while recognizing that the expert was able to testify as to the sanity of particular "alters." *Id.* at 1030. Nonetheless, the court upheld the trial court's broad restriction on DID evidence from both the victim and Petitioner himself. The court offered no separate justification for the extension of the limitation to the victim and Petitioner. *Id.* at 1030–31.

■ The *expert's* inability to assess the sanity of *Petitioner's* overall personality system did not bear, however, on Petitioner's right to describe his own state of mind at the time of the attack or on Petitioner's right to present the *victim's* testimony about her observations. After recognizing the validity of DID as a diagnosis, and after giving no justification pertaining to non-expert witnesses, it was an unreasonable application of *Washington* and *Rock* for the *Washington* Supreme Court to uphold the state trial court's broad prohibition of DID evidence to exclude the testimony of the victim and the criminal defendant.

We emphasize that our holding is a narrow one.

—We do not hold that a defendant or a victim must be allowed to present *any* defense, no matter how bizarre or far fetched. But here, what Petitioner offered through his own statements and the testimony of the most important percipient witness was a defense that the Washington Supreme Court itself recognizes as generally valid as a matter of state law.

—We do not hold that the result in this habeas proceeding necessarily would be the same if only expert testimony were at issue.

—We do not hold that expert testimony on DID is required in this or any other case as a matter of federal constitutional law. We realize that our requiring the state court to permit DID evidence from the victim and Petitioner may have the consequence of requiring expert testimony to provide context for the finder of fact. *See Greene*, 984 P.2d at 1031–32 (suggesting that expert testimony is required when scientific evidence is admitted). To the extent that expert testimony is necessary in these circumstances, it is indirectly required by state rules of evidence, not directly required by the Constitution.

—We do not hold that Washington Rule of Evidence 702 is defective in any way.

—We do not hold that a state is precluded from requiring that a particular expert be qualified properly, or from requiring any other appropriate foundation for expert testimony, in this or any other case.

—Perhaps most obviously, we do not hold that Petitioner is entitled to prevail on his defenses. We hold only that the Federal Constitution affords him an opportunity to present his own testimony and that of the victim concerning his state of mind at the time of the attack.

## CONCLUSION

The Washington Supreme Court actually considered Petitioner's Sixth Amendment claim, so that his claim was exhausted in state court. In view of *Washington, Rock,* and *Scheffer,* that court's application of clearly established federal constitutional law was unreasonable. The district court's grant of the writ of habeas corpus is

AFFIRMED.

O'SCANNLAIN, Circuit Judge, dissenting.

I respectfully dissent from the court's determination that Greene's claim is properly exhausted. I place more reliance than does the majority on the Washington Supreme Court's explicit statement that it did not reach Greene's claim, and I am simply not persuaded that the majority's construction of the state court's explanatory language justifies the contrary conclusion at which it arrives.

Because I conclude that Greene did not fairly present his federal claim to the Washington courts, I express no view on the merits of that claim.

### I

I largely agree with the majority's discussion of the legal standard by which we must determine whether Greene properly exhausted the federal claim in his habeas petition.[1] Specifically, I agree that "[o]ur decision hinges on what happened to [Greene's] motion [for reconsideration]," and that "[i]f the Washington Supreme Court ... adjudicated the claim on the

---

1. Although Greene's federal habeas petition presented his constitutional claim under three separate headings, *see supra* at 1085, his motion for reconsideration in the state court listed it under a single heading and with a single rationale. Thus, like the majority, I refer to Greene's claim in the singular.

merits, then the claim may proceed" in federal court. *Supra* at 1087. The reason, as the majority recognizes, see *id.* at 1087 & n. 2, is that the constitutional claim was "presented for the first and only time in a procedural context in which its merits will not be considered" as of right, but reviewed only at the state court's discretion. *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). Raising a claim in that manner does not satisfy the exhaustion requirement unless the state court "actually pass[es]" upon the claim." *Id.*

Thus, the majority and I frame our analyses largely the same way. I note, however, that the majority's invocation of *Harris v. Superior Court,* 500 F.2d 1124 (9th Cir.1974) (en banc), may be misplaced. Like *Hunter v. Aispuro,* 982 F.2d 344 (9th Cir.1992), which the majority also cites, *Harris* turned on the practices and procedures by which the California appellate courts considered state habeas corpus petitions. I do not think that *Harris* creates a presumption in favor of finding a claim exhausted, for two reasons: First, the *Harris* court considered the exhaustion requirement in the context of California's system of postconviction relief, which permits prisoners to bring original habeas corpus petitions in the state Supreme Court, rather than require them first to

file in a lower court and then to seek discretionary review of that court's denial of relief. *See Harris,* 500 F.2d at 1127–28 & nn. 5–6. In that context, the Harrises' original petitions to the California Supreme Court more closely resemble the appeal as of right considered in *Smith v. Digmon,* 434 U.S. 332, 333, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978) (per curiam), and distinguished in *Castille,* 489 U.S. at 350–51, 109 S.Ct. 1056, than the more discretionarily decided motion for reconsideration that is at issue in this case.[2] *Cf. Nino v. Galaza,* 183 F.3d 1003, 1006 & nn. 2–3 (9th Cir.1999) (treating three original habeas petitions to the three levels of the California court system as a single "pending" proceeding). Second, *Harris* relied specifically on the California Supreme Court's *practice* of making its intentions explicit when denying original habeas petitions on procedural grounds, a procedure that justified our presumption that unexplained denials *from that court* rested on the merits. *See Harris,* 500 F.2d at 1128–29. *Harris* did not indicate that state courts *must* adopt such a clear-statement rule, only that state courts that *do* adopt such a "beneficial" practice, *id.* at 1128, may rely on this court to apply it faithfully.[3]

Notwithstanding our differing readings of *Harris,* the majority and I agree that if

---

**2.** A related distinction between that case and this one is that Harris's habeas petition was his last opportunity to exhaust his claims before his state's court of last resort, whereas Greene still had open the option of filing a PRP. *Cf. Castille,* 489 U.S. at 350–51, 109 S.Ct. 1056 (noting that federal courts "infer an exception" to the plain language of 28 U.S.C. § 2254(c), which "appears to preclude a finding of exhaustion if there exists any possibility of further state-court review," when the state courts have "actually passed on the claim").

**3.** In the separate but closely related context of procedural default, the Supreme Court has

cautioned us that this presumption is not absolute even when considering the California Supreme Court's denials of habeas petitions. Where the petitioner files in the lower courts, rather than proceeding straight to the California Supreme Court, and where the "last reasoned decision" before the petition reaches the state's high court "explicitly imposes a procedural default," the Supreme Court has stated that an unexplained denial from the California Supreme Court presumptively does not represent a decision on the merits that lifts that default. *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), *rev'g* 904 F.2d 473 (9th Cir.1990).

the Washington Supreme Court declined to reach the claim presented in Greene's motion for reconsideration, then that motion was inadequate to exhaust the claim. Although in that case Greene still could have brought his claim in an application for state postconviction relief, a "personal restraint petition" (PRP) to the Washington appellate courts, *see* Wash. R.App. P. 16.3.4; *see also In re Gentry,* 137 Wash.2d 378, 972 P.2d 1250, 1256 (1999) (en banc) (indicating that failure to raise a claim on direct review does not preclude raising it in a PRP), Greene filed no such petition, and he cannot now do so. *See* Wash. Rev.Code Ann. § 10.73.090(1) (West 1990) (imposing a one-year time limit on most petitions for postconviction relief). Thus, if the Washington Supreme Court did not address the merits of the constitutional claim in denying the motion for reconsideration, Greene's claim is now procedurally defaulted. *See, e.g., Shumway v. Payne,* 223 F.3d 982, 988–89 (9th Cir.2000) (reaffirming that Washington's one-year limitations period is an adequate and independent state ground that bars habeas review of an unexhausted claim, absent a showing of cause and prejudice or actual innocence).

## II

I next turn to the dispositive question: whether the Washington Supreme Court considered the merits of Greene's claim. Here I must part company with the majority.

As the court's opinion recognizes, we certainly would have concluded that Greene's claim was unexhausted had the Washington Supreme Court merely denied his motion for reconsideration without comment. *Supra* at 1087 & n. 2. The only evidence pointing to an even possibly contrary conclusion is the footnote that the state court added to its opinion at the same time it denied the motion. However, on my reading, the text of that footnote evinces little more consideration of the merits than would the denial of the motion standing alone.

For me, the starting point is the court's explicit statement that it "d[id] not reach this issue." Indeed, this pronouncement standing alone would likely be enough to satisfy even a clear-statement rule like the one that applies in the procedural default context. Where, as here, the bar is lower and the question is only whether the state court exercised its discretion to consider the claim at issue, the court's own announcement that it chose not to exercise that discretion ought to be virtually dispositive.

Of course, the state court did add a few more words, specifically the subordinate clause "Since we decide this case on more narrow grounds." And as the majority states, this verbiage did render the added footnote somewhat "cryptic." *Supra* at 1087. However, I believe that the only reading of that footnote that gives full effect to the court's own words leads directly to the conclusion that the court did not consider Greene's claim on the merits.

The majority divines in the opening dependent clause's language an anticipatory repudiation of the succeeding independent clause's plain statement that the court was not addressing the constitutional issue. In the majority's view, *see id.,* the reference to "more narrow grounds" encapsulates the court's decision on the merits of Greene's claim: the state evidentiary rule is legitimate, so its application to keep the testimony out does not violate the Sixth Amendment. But if the state court reasoned as the majority thinks it did, it *collapsed into one* the separate inquiries into the state rules of evidence and the U.S. Constitution. I cannot see why a court that *based* its rejection of a constitutional claim on its reading of state law would then turn around and describe the state law as "more narrow grounds" that

justify its decision not to reach the federal issue.

There is a more natural interpretation of the qualifying clause "Since we decide this case on more narrow grounds," one that does not negate the independent clause it modifies.[4]

I read the Washington Supreme Court's amendment to indicate that the court did not feel free to consider the constitutional claim because the state law issue was *the only issue properly before it.* This is the only construction that gives effect to the *entire* text of the state court's amendment—the word "Since"; the phrase "more narrow"; and, of course, the operative clause "we do not reach."[5] And it makes eminent sense in light of the Washington Rules of Appellate Procedure, under which the Washington Supreme Court considers only issues raised in the petition for review, the answer, or the order granting review, *see* Wash. R.App. P. 13.7(b), or (in exceptional cases) in a supplemental brief filed before the decision, *see* Wash. R.App. P. 12.1(a), 13.7(d); *Douglas v. Freeman,* 117 Wash.2d 242, 814 P.2d 1160, 1168 (1991) (en banc).

In at least one recent case, the Washington Court of Appeals took a similar course in a comparable situation. Rule 12.1(a)'s restrictions on the issues properly before an appellate court and Rule 12.4(c)'s strictures on the points appropriate to a motion

for reconsideration apply equally to both Washington appellate courts, *see* Wash. R.App. P. 1.1(d), so the interpretation of those rules by the Court of Appeals is instructive. Just as in this case, in response to a motion for reconsideration that raised an argument not argued in the briefs, the court added a footnote to its published decision declining to reach the late-raised contentions. *1515–1519 Lakeview Boulevard Condo. Ass'n v. Apartment Sales Corp.,* 17 P.3d 639, 640 (Wash. Ct.App.) (stating that "[b]ecause the parties did not argue public policy in their briefs, we do not reach this issue," and citing Rule 12.1(a)), *modifying* 102 Wash. App. 599, 9 P.3d 879, 883 (2000). And unlike Greene, the civil litigant in *Lakeview Boulevard* lacked the guaranteed opportunity to present its claim on collateral review.

Thus, reading the Supreme Court's added footnote in context—in light of the restrictions on presenting issues to that court and Greene's complete failure to comply with them—leads me back to the same conclusion to which the text of the footnote pointed: that the Washington Supreme Court declined to consider Greene's claim, for the entirely legitimate reason that Greene had presented it belatedly, in a pleading to which the State lacked the right to respond,[6] when he still had available the more appropriate option of filing a PRP. And the court's decision not to reach

---

**4.** *Cf. United States v. Emerson,* 270 F.3d 203, 233 n. 32 (5th Cir.2001) (discussing principles by which courts construe introductory clauses in relation to the independent clauses they modify and justify).

**5.** The existence of "more narrow" state law grounds would also explain a decision not to reach a broader constitutional issue if upholding the federal claim would lead to the same result. *E.g., Skagit Surveyors and Engineers, LLC v. Friends of Skagit County,* 135 Wash.2d 542, 958 P.2d 962, 964 (1998) (en banc) ("Because we decide this appeal on statutory grounds, we do not reach the constitutional

issues."). That is not the case here; state law led the Washington Supreme Court to reverse, and accepting Greene's constitutional argument would have required it to affirm (on other grounds).

**6.** Wash. R.App. P. 12.4(d); *see State v. Thomson,* 123 Wash.2d 877, 872 P.2d 1097, 1101 (1994) (en banc) ("This court will not consider a constitutional issue when it is not timely filed. As the defense counsel conceded at oral argument, he first raised the issue in a supplemental brief belatedly filed on January 3. The issue was not raised in the courts below or in prior briefs, and the State did not

the constitutional issue left that issue unexhausted—notwithstanding the court's addition of a few explanatory words. All the court did was to *consider whether to consider* the constitutional claim and decide that it "need not" do so (not that the claim was meritless); that degree of examination simply is not enough to satisfy the exhaustion requirement where an avenue of state court review (here, a PRP) remains open. *See Castille*, 489 U.S. at 351, 109 S.Ct. 1056 (concluding that a claim remained unexhausted when it was raised only in a petition for allocatur, a certiorari-like form of discretionary review by the Pennsylvania Supreme Court, and that petition was denied). Although a court necessarily "ha[s] thought about[a] new federal claim" when it chooses not to reach it, *supra* at 1087, that thought does not focus and that choice does not rest squarely on the merits. *Cf., e.g.*, Sup.Ct. R. 10; *United States v. Carver*, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361 (1923) ("The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times.").

A decision not to decide an issue, even when accompanied by a few explanatory sentences, does not mean that the court "actually passes" on that issue; it means instead that it "takes a pass." And where, as here, the defendant retains the right to place his claim unambiguously before a state court simply by filing a petition for state postconviction relief, the exhaustion requirement demands that he do precisely that before coming to federal court. To hold otherwise is to "blue-pencil[ ] ... from the text of the statute" the requirement that the petitioner present his claim

to the state courts by "any available procedure." *Castille*, 489 U.S. at 351, 109 S.Ct. 1056; 28 U.S.C. § 2254(c).

### III

Far from a mere formality, the exhaustion requirement represents Congress's decision, rooted in respect for our federal system, that state judiciaries must be given the first opportunity to correct their own errors—even errors of federal law—and that federal habeas courts are to step in only if the state courts fail to do so.[7] In concluding that Greene complied with this requirement, the majority lowers the bar and undermines Congress's policy judgment.

I respectfully dissent.

---

have an adequate opportunity to respond to the argument. Because the Defendant did not timely raise the state constitutional issue, we do not reach it."). By contrast, the State has not only the opportunity but the obligation to respond to a PRP. Wash. R.App. P. 16.9.

7. *See, e.g., Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 2127–28, 150 L.Ed.2d 251 (2001) (citing cases); *Tillema v. Long*, 253 F.3d 494, 501 (9th Cir.2001).