**Gregory Ulas POWELL, Petitioner–Appellant,**

**v.**

**Alfonso GOMEZ, Warden, Respondent–Appellee.**

No. 93–16465.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1994.

Decided Aug. 19, 1994.

Dennis P. Riordan, Dylan L. Schaffer, Riordan and Rosenthal, San Francisco, CA, for petitioner-appellant.

Dane R. Gillette, Deputy Atty. Gen., San Francisco, for respondent-appellee.

Before WALLACE and WIGGINS, Circuit Judges and TURRENTINE, District Judge.*

TURRENTINE, District Judge:

## OVERVIEW

In 1963, Gregory Powell and his co-defendant kidnapped two Los Angeles police officers and drove them to a field outside of Bakersfield, California. Rather than releasing the officers as he had promised, Powell shot at both officers. One officer died of the wounds and the other officer escaped.

After two trials, a Los Angeles County Superior Court jury convicted Powell of first degree murder and sentenced him to death. *People v. Powell*, 67 Cal.2d 32, 59 Cal.Rptr. 817, 429 P.2d 137 (1967). In 1974, Powell's sentence was commuted from death to life imprisonment. *People v. Powell*, 40 Cal. App.3d 107, 169, 115 Cal.Rptr. 109 (1974).

Powell was scheduled to be released in June 1982. In April 1982, the Board of Prison Terms (BPT) rescinded the parole date in part on the testimony of Chief Psychiatrist at the Department of Corrections' Northern Parole Outpatient Clinic, Dr. Diane Sutton, and her team's report (the "Sutton Report") raised doubt as to Powell's suitability for parole. The Sutton Report was based on alleged instances of sexual misconduct, lack of adequate employment plans, and possible brain damage. The BPT Appeals Unit affirmed the BPT's decision in August 1982.

Powell then filed a habeas petition in Solano County Superior Court in May 1983 challenging the BPT's decision to rescind his parole. Judge Ellis Randall granted Powell's petition on September 26, 1983. On June 27, 1988, the California Supreme Court reversed the superior court's ruling. *In re Powell*, 45 Cal.3d 894, 248 Cal.Rptr. 431, 755 P.2d 881 (1988).

Powell next filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of California on May 17, 1991. The district court denied the petition on June 25, 1993.

Powell appeals the district court's denial of his petition. We have jurisdiction under 28 U.S.C. § 2253, and we affirm.

## DISCUSSION

■ We review *de novo* the district court's denial of Powell's habeas petition. *Harris v. Vasquez*, 949 F.2d 1497, 1510 (9th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992).

■ Due process requires that there be "some evidence" in the record to support a decision to revoke parole. *Perveler v. Estelle*, 974 F.2d 1132, 1134 (9th Cir.1992). Additionally, the evidence must bear "some indicia of reliability." *Id.* The "some evidence" standard is minimally stringent, such that a decision will be upheld if there is "'*any* evidence in the record that *could* support the conclusion reached by the disciplinary board.'" *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir.1987) (citing *Superintendent v. Hill*, 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985)).

Powell urges the court to review the reliability of the evidence supporting the BPT's decision to rescind his parole. To justify his contentions, Petitioner argues that the sufficiency of "reliable" evidence is a mixed question of fact and law subject to *de novo* review.

* Hon. Howard B. Turrentine, Senior District Judge for the Southern District of California, sitting by designation.

The United States Supreme Court has held that federal courts should defer to state courts on questions of "historical" fact decided by state courts, but mixed questions of law and fact qualify for *de novo* consideration. *Miller v. Fenton*, 474 U.S. 104, 113–15, 106 S.Ct. 445, 451–52, 88 L.Ed.2d 405 (1985). Merely because an issue is factual in nature and its resolution disposes of the constitutional question does not transform the factual character of the issue into a legal issue. *Id.* at 113, 106 S.Ct. at 451.

In evaluating whether a question is one of fact or fact and law, the *Miller* Court opined that, in the absence of congressional guidance, the "fact/law distinction at times has turned on a determination that, as a matter of sound administration of justice, one judicial actor is better positioned than another to decide the issue in question." *Id.* at 114, 106 S.Ct. at 451. For example, the trier of fact can more readily evaluate the demeanor of a witness in a situation in which the credibility of a witness is crucial. *Id.* Federal review may also be necessary to compensate for perceived shortcomings of the trier of fact, such as bias, but should not alter the court's "primary function as an expositor of law." *Id.*

The district court applied the presumption of correctness pursuant to 28 U.S.C. § 2254(d) to the California Supreme Court's finding that the evidence supporting rescission was reliable. *Sumner v. Mata*, 449 U.S. 539, 550, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981). The appeals court may set aside the factual findings only if they lack "fair support" in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983).

Powell argues that *Miller* supports *de novo* review of the reliability of the evidence, namely the Sutton Report, on two grounds. First, Powell contends that *de novo* review is proper because resolution of the due process issue does not depend on the credibility of a witness or the evaluation of a witness' demeanor. Secondly, Powell argues that independent federal review is appropriate to compensate for the shortcomings of the trier of fact who endured political pressure to rescind Powell's parole.[1]

We reject both of Powell's contentions. Powell concedes that no factual dispute exists as to the contents of the Sutton Report. Despite this concession, Powell asks this court to determine whether the undisputed facts constitute a reliable basis for rescinding Powell's parole.

This court views acceptance and interpretation of a psychiatric report as an act more akin to an assessment of credibility of a witness than an act of legal analysis. The review of, and conclusions derived from, the report thus fall solely within the province of the trier of fact, in this case, the BPT. The BPT had the opportunity to evaluate the author of the report, an opportunity which various appeals courts did not have.

Since we decline to review the evidence *de novo*, we must determine whether the BPT's decision bore some indicia of reliability. The California Supreme Court found that the Sutton Report supported the BPT's decision. *In re Powell*, 45 Cal.3d at 906, 248 Cal.Rptr. 431, 755 P.2d 881. The Sutton Report concluded that "significant doubt remained regarding Powell's ability to adjust successfully on parole and to refrain from engaging in violent acts or reverting to a criminal lifestyle." *Id.* at 899–900, 248 Cal. Rptr. 431, 755 P.2d 881. Among others, the Sutton Report expressed concern that no testing had been conducted on Powell to explore the possibility of brain damage after he sustained two potentially harmful head

---

1. Powell argues that the BPT and California Supreme Court succumbed to political pressure in February 1982. In early February 1982, a television movie entitled "The Onion Field" (based on a book by the same name by Joseph Wambaugh) aired depicting Powell's crime. Following the movie, the BPT received letters from state and local politicians and the Los Angeles District Attorney opposing Powell's parole. The BPT subsequently ordered a rescission hearing, and rescinded Powell's parole. Powell appealed, and Judge Randall granted his petition. On appeal to the California Supreme Court, the court initially affirmed the superior court's ruling. The California Attorney General petitioned for rehearing, and the California Supreme Court vacated and reversed its earlier decision. *See In re Powell*, 45 Cal.3d 894, 248 Cal.Rptr. 431, 755 P.2d 881 (1988).

injuries. The first incident occurred during a boxing match, and the second occurred when another inmate struck Powell on the head with a stool. Both incidents rendered Powell unconscious. The Sutton Report suggested that the BPT conduct further investigation as to the possibility of brain damage because brain damage tends to lower inhibitions to impulsive behavior.

Though the evidence of brain damage was in conflict, and the Sutton Report did not specifically recommend rescission of Powell's parole, the BPT determined that the possibility of brain damage and potential resulting violent behavior warranted rescission. This court cannot reweigh the evidence, but looks only to see if "some evidence" supports the BPT's decision. We hold that the evidence contained in the Sutton Report satisfies the minimally stringent "some evidence" standard. We further hold that the evidence is reliable. Powell did not contest the occurrence of the head injuries nor the conclusion that serious head injuries can affect behavior. Therefore, we affirm the decision of the district court and deny Powell's petition.

AFFIRMED.