**John B. TIDWELL, aka John
Benjamin Tidwell,
Petitioner,**

v.

**John MARSHALL, Respondent.**

**No. 06–0575–AG (RC).**

United States District Court,
C.D. California.

Nov. 30, 2007.

John B. Tidwell, San Luis Obispo, CA, pro se.

Amanda Lloyd, Office of the Attorney General, San Diego, CA, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

ANDREW J. GUILFORD, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a de *novo determination.*

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Andrew J. Guilford, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

### BACKGROUND

**I**

On December 19, 1978, in Orange County Superior Court case no. C40243, a jury convicted petitioner John B. Tidwell, aka John Benjamin Tidwell, of one count of first degree murder in violation of California Penal Code ("P.C.") § 187, and the jury found petitioner personally used a firearm in the commission of the offense within the meaning of P.C. §§ 969d and 12022.5. Lodgment nos. 1–3. The petitioner was sentenced under California's former Indeterminate Sentencing Law to life in state prison. Lodgment no. 3 at 12:13–19.

**II**

On June 26, 2006, petitioner, proceeding pro se, filed the pending habeas corpus petition under 28 U.S.C. § 2254 challenging the refusal of the California Board of Prison Terms ("Board")[1] to grant him pa-

---

1. The Board was abolished effective July 1, 2005, and replaced with the Board of Parole Hearings. P.C. § 5075(a).

role. On October 27, 2006, respondent answered the habeas corpus petition, and petitioner filed a reply on November 28, 2006.

The pending petition raises the following claims:

Ground One—"Petitioner was denied due process rights ... by the [Board] failing to find him suitable for parole, thus depriving him of a liberty interest" (Petition at 7a);[2]

Ground Two—"Parole denied by the [Board] for ISL prisoner under [P.C. § 3041(a)] has made petitioner's 27 years confinement constitutionally excessive" (Petition at 11a);

Ground Three—"Petitioner was denied due process rights ... when [the Board] failed to find him suitable for parole because of the committed offense/prior arrests" (Petition at 14a);

Ground Four—"Petitioner was denied his due process rights to be heard ... as a multijurisdiction prisoner by the [Board]" (Petition at 22a–26a); and

Ground Five[3]—The Board's "decision reflects a bias, prejudice and arbitrary or capricious action" since the panel was not "fair and objective" due to panel members having backgrounds in law enforcement or as victim's rights advocates (Petition at 27a–28a).

### III

The petitioner's minimum eligible parole date was May 12, 1985, Lodgment 7 at 1, and he has had eight parole suitability hearings since then. Petition at 2–4 & Exhs. C–H. His most recent parole hearing was held on November 17, 2004, at which time the Board denied petitioner

parole for two years. Lodgment no. 7 at 73:17–21. The Board cited several reasons for finding petitioner "is not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison":

█ Certainly, one of the first things that we considered was this commitment offense. Based on the information we have at hand, this was a situation where the victim, Harold Rinehart, a young man, committed a residential burglary, and at that burglary he received several thousand dollars in cash. Apparently, Alexandria Fox, who was his roommate, knew [petitioner], contacted him, and they devised a plan for [petitioner] to come to California from Las Vegas, and steal the money from Mr. Rinehart. [Petitioner] took Mr. Rinehart out into, not a remote area, but away from the residence to an area where he was able to take the money from the victim. Also he shot him in the back and left the body out on Silverado Canyon Road. This was certainly an offence that was callous. It was certainly dispassionate. This was an offense where the motive for the murder of this young man was robbery, which is a very trivial reason to kill another human being. And it was certainly a crime that was carried out in a manner that demonstrates a callous disregard for human suffering. [2] This prisoner has a prior history of contact with law enforcement. We have several arrests in his record where no disposition is noted. However, there is an arrest in 1973 in Ohio where he pled guilty to a charge of assault with intent to commit rape. He also was sentenced to prison in Ohio for interstate racketeering and prostitution, and has a hold

---

**2.** Pages 1a–30a are the pages petitioner attached after page 8.

**3.** The petitioner has raised Ground Five as a subpart of Ground Four; however, given the

disparate nature of the claims raised in Ground Four, the Court has separated Ground Five from Ground Four.

from the State of Ohio for a double murder in that state, the murder of an elderly couple. Certainly, he has an escalating pattern of criminal conduct. [3] His unstable social history would include that prior criminality, and just in general the lifestyle that he was apparently living at that time after his service in the military. The prisoner has programmed well. He has, as noted at the hearing today, he's not upgraded vocationally while he's been in the State of California prison system. However, he has completed certification in sign language and also as a customer service clerk. There was a lot of discussion today about sign language as a vocation. And I do want to note for the record that it is indeed a vocation. I don't know how many jobs there are for sign language interpreters, but I do know that that's one of those skills that apparently you're really good at or you're not, and to be, to sign for a living is something that requires a lot of skill. [4] The psychiatric evaluation, dated 2/11/02, authored by Dr. Cherry, is not totally supportive of release in that it still indicates that [petitioner] would be a moderate level of risk for future violence. He does have parole plans that involve the State of Florida, and since he'll be going to Ohio if he's released from California, those plans are probably as good as he's going to be able to do at this point. The hearing Panel notes that in response to [P.C. § ] 3042 Notices, the District Attorney of Orange County had a representative here today who spoke in opposition to a finding of suitability at this time. And also the Orange County Sheriff's Department sent a letter indicating opposition to a finding of suitability at this time. We do want to commend [petitioner] for the work that he's been doing while he's been incarcerated. He recently completed the Alternatives to Violence Program. He has been praised for his volunteer work as an HIV educator. He has worked continuously as a clerk with the Protestant Chapel in religious studies and as noted before he completed three courses of sign language; beginning sign language one and two, and religious sign language. And I just want to note that he has programmed in other ways. I'm not reading everything into the record, but he has, he's been programming very well. However, currently the positive aspects of his behavior do not outweigh the factors of unsuitability.

Lodgment 7 at 70:15–73:17. The Board then determined petitioner must wait two years for his next parole suitability hearing, stating:

> The specific reasons for this finding are as follows: [1] first of all the commitment offense. This was a very cruel offense, this was the murder of a young man. He was taken out onto Silverado Canyon Road and robbed and shot, shot in the back with a shotgun. This was an offense that was planned ahead of time and was carried out in a very dispassionate manner. [2] The prisoner has an extensive history of misconduct. He has numerous arrests, while we don't show dispositions, he also has arrests in the State of Ohio where he pled guilty to assault with intent to commit rape where he was convicted of interstate racketeering and prostitution. [3] Recent psychiatric evaluation, dated 2/11/02, authored by Dr. Cherry, indicates a need for a longer period of observation and evaluation or treatment. The Panel recommends that the prisoner remain disciplinary-free, continue to upgrade when available and just continue his positive programming and self-help. . . .

Lodgment no. 7 at 73:17–74:15.

On September 9, 2005, petitioner filed a habeas corpus petition challenging the

Board's decision in the San Luis Obispo County Superior Court, which transferred the petition to the Orange County Superior Court. Lodgment nos. 8–9. On October 25, 2005, the Orange County Superior Court denied the habeas corpus petition. Lodgment no 10. On December 20, 2005, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, which denied the petition on January 26, 2006. Lodgment nos. 11–12. Finally, on February 7, 2006, petitioner filed a petition for review in the California Supreme Court, which was denied on April 26, 2006. Lodgment nos. 13–15.

## DISCUSSION

### IV

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume a state court's determination of factual issues is correct, and petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ The California Supreme Court reached the merits of petitioner's claims when it denied his petition for review without comment or citation to authority. *Gaston v. Palmer,* 417 F.3d 1030, 1038 (9th Cir.2005), *amended by,* 447 F.3d 1165 (9th Cir.2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 979, 166 L.Ed.2d 742 (2007); *Hunter v. Aispuro,* 982 F.2d 344, 348 (9th Cir. 1992), *cert. denied,* 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Castillo v. McFadden,* 399 F.3d 993, 1001 (9th Cir.2005), *cert. denied,* 546 U.S. 818, 126 S.Ct. 348, 163 L.Ed.2d 58 (2005). Thus, in addressing Grounds One, Three, and Four, this Court will consider the reasoning of the Orange County Superior Court, which denied those claims on the merits. *Bonner v. Carey,* 425 F.3d 1145, 1148 n. 13 (9th Cir.2005), *amended by,* 439 F.3d 993 (9th Cir.), *cert. denied,* —— U.S. ——, 127 S.Ct. 132, 166 L.Ed.2d 97 (2006); *Fowler v. Sacramento County Sheriff's Dep't,* 421 F.3d 1027, 1038 (9th Cir.2005). However, with regard to Grounds Two and Five, which have not been the subject of any reasoned state court decision, this Court must conduct "an independent review of the record" to determine whether the California Supreme Court's denial of these claims was contrary to, or involved an unreasonable application of, clearly established federal law. *Brazzel v. Washington,* 491 F.3d 976, 981 (9th Cir.2007).

### V

■ The Fourteenth Amendment's due process clause provides that a person

may not be deprived of life, liberty, or property without due process of law. The Supreme Court "examine[s] procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (citations omitted); *Sass v. California Bd. of Prison Terms,* 461 F.3d 1123, 1127 (9th Cir.2006). "Under the 'clearly established' framework of Greenholtz [4] and Allen, [5] ... California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan,* 306 F.3d 895, 902 (9th Cir.2002)(footnotes added); *Sass,* 461 F.3d at 1127–28; *see also Irons v. Carey,* 505 F.3d 846, 850–51 (9th Cir. 2007) ("California Penal Code section 3041[6] vests [petitioner] and all other California prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." (footnote added)).

■ "It is axiomatic that due process 'is flexible and calls for such procedural protections as the particular situation demands.'" *Greenholtz,* 442 U.S. at 12, 99 S.Ct. at 2106 (citations omitted); *Wilkinson v. Austin,* 545 U.S. 209, 224, 125 S.Ct. 2384, 2395, 162 L.Ed.2d 174 (2005). In

parole suitability hearings, the state procedure must "afford[ ] an opportunity to be heard, and when parole is denied [the Board must] inform[ ] the inmate in what respects he falls short of qualifying for parole." *Greenholtz,* 442 U.S. at 16, 99 S.Ct. at 2108; *Bermudez v. Duenas,* 936 F.2d 1064, 1066 (9th Cir.1991). Moreover, under California law, "[p]risoners are entitled to be present at the hearing, speak and offer evidence on their own behalf, and prisoners serving a life sentence are entitled to be represented by counsel at the hearing." *Biggs v. Terhune,* 334 F.3d 910, 915 (9th Cir.2003) (citations omitted); P.C. §§ 3041.5(a) (2004), 3041.7 (2004). Additionally, if a parole date is not set, an inmate is entitled to "a written statement setting forth the reason or reasons for refusal to set a parole date, [including] suggest[ed] activities in which he or she might participate that will benefit him or her while he or she is incarcerated." P.C. § 3041.5(b)(2) (2004).

■ In Ground One, petitioner claims he was denied due process of law because he "was not allowed to present all his relevant documents before the Board" and because he "was not present at the time when the [Board] gave its decision...." Petition at 10a, 27a. Moreover, petitioner complains that although counsel represented him before the Board, she "did not protect her client's best interest by objecting when the violations occurred at the hearing." Petition at 10a–11a.

**4.** *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

**5.** *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987).

**6.** At the time of petitioner's parole hearing, California's parole scheme provided that the Board:

shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.
P.C. § 3041(b) (2004).

The Orange County Superior Court denied petitioner's claim, stating:

> Petitioner complains that the [Board] did not conduct the hearing in accordance with several of the governing regulations. It is true that the discretion to determine whether [a] prisoner should be released on parole is subject to procedural due process. The burden is Petitioner's, however, to demonstrate that his due process rights were infringed.
>
> \* \* \* \* \* \*
>
> For example, Petitioner complains counsel did not object when the decision was orally rendered in Petitioner's absence, and states he had a right to be physically present. Petitioner's procedural rights vis-a-vis his parole hearing are enumerated in California Code of Regulations, title 15, sections 2245 through 2255. A right to be present when the decision is orally rendered is not among them.[¶] Thus [,] Petitioner fails to carry his burden and the petition is denied on that basis.

Lodgment no. 10 at 3–4 (citations omitted).

Here, petitioner was present at his parole suitability hearing and represented by counsel at the hearing, and petitioner received the Board's written decision. *See* Petition, Exh. J; Lodgment no. 7 at 1–2. Petitioner was also afforded an opportunity to speak, *see id.* at 1–69; however, during his closing statement to the panel, Presiding Commissioner Fisher interrupted petitioner, stating:

> Let me stop you, Mr. Tidwell, because we're aware of all of this [discussion of how if he received parole in California he would be released to the custody of Ohio] and I think you're kind of wasting your time, because we know that. **I'd really like you to tell us what about you makes you suitable, okay.** I mean if you feel that that's not important enough to use your time on—but we are in possession of the former Board reports and we are in possession of your appeals, so you may be going over old ground, I just want to tell you.

Lodgment no. 7 at 64–65 (emphasis added). Petitioner's contention that this interruption somehow denied him due process is specious. Following the interruption, petitioner was able to complete his statement. Lodgment no. 7 at 65–69. Moreover, the request that petitioner address his suitability for parole did not prevent petitioner from presenting the Board with relevant documents; nor has petitioner identified any relevant documents he was not allowed to present to the Board. *See McKissick v. Hamlet,* 2002 WL 1837800, *3 (N.D.Cal.) (inmate not denied due process of law when he did "not identif[y] a single piece of evidence he wanted to present, but was precluded from presenting, at the [parole] hearing."), affirmed by, 116 Fed.Appx. 163 (9th Cir.2004). To the contrary, the panel specifically provided petitioner with a list of documents to be used at the hearing and asked petitioner's attorney if she had "anything that needs to be submitted" and she replied she had the documents and had nothing to submit. Lodgment no. 7 at 7.

Nor has petitioner demonstrated he was denied due process of law when the Board announced its decision in the presence of petitioner's attorney, and not petitioner. Since no United States Supreme Court opinion holds a prisoner has the right to be present during the Board's verbal decision, *see Greenholtz,* 442 U.S. at 16, 99 S.Ct. at 2108; *Bermudez,* 936 F.2d at 1066, the California Supreme Court's denial of this claim is neither contrary to, nor an unreasonable application of, clearly established federal law. *See Stevenson v. Lewis,* 384 F.3d 1069, 1071 (9th Cir.2004) ("If there is no Supreme Court precedent that controls a legal issue raised by a

petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law."), *cert. denied,* 543 U.S. 1191, 125 S.Ct. 1408, 161 L.Ed.2d 197 (2005); *Brewer v. Hall,* 378 F.3d 952, 955 (9th Cir.) (same), *cert. denied,* 543 U.S. 1037, 125 S.Ct. 814, 160 L.Ed.2d 602 (2004).

## VI

■ In Grounds One and Three, petitioner claims he was denied due process of law when the Board found him unsuitable for parole based on his prior convictions and offenses. Petition at 11a, 14a–21a, 26a–27a. The Orange County Superior rejected this claim, stating:

> [T]he [Board] must make preliminary determination whether an inmate would be [a] continuing danger to public safety if released. If the [Board] determines consideration of the public safety requires more incarceration, it may deny parole without considering any other suitability factors as long as its preliminary determination is supported. Here [,] the [Board] found Petitioner would pose an unreasonable risk of danger to society if released based on the nature of the crime, Petitioner's prior criminal history, his unstable social history, and the psychological assessment. The [Board] determination was thus supported. The petition is denied on that basis.

Lodgment no. 10 at 2–3.

■ The Board's decision satisfies due process if "some evidence supports the decision[.]" *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 455, 105 S.Ct.

2768, 2774, 86 L.Ed.2d 356 (1985); *Rosas v. Nielsen,* 428 F.3d 1229, 1232 (9th Cir. 2005) (per curiam).[7] Although "[t]he 'some evidence' standard is minimally stringent," *Powell v. Gomez,* 33 F.3d 39, 40 (9th Cir. 1994) (citations and internal quotation marks omitted); *Hill,* 472 U.S. at 455–56, 105 S.Ct. at 2774, " 'the evidence underlying the decision must have some indicia of reliability.' " *Biggs,* 334 F.3d at 915; *Rosas,* 428 F.3d at 1232. Nevertheless, "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the ... board." *Hill,* 472 U.S. at 455–56, 105 S.Ct. at 2774; *Sass,* 461 F.3d at 1128. Thus, in assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, [this Court's] analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons,* 505 F.3d at 850–51 *Biggs,* 334 F.3d at 915.

■ Under California law, the Board must consider numerous factors in making its determination whether to grant parole, including the inmate's:

> social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of

---

7. Although *Hill* involved the quantum of evidence necessary to satisfy due process in the context of prison discipline and the loss of good time credits, *Hill* also applies to parole hearings. *See Irons,* 505 F.3d at 850–51 ("[T]he Supreme Court ha[s] clearly estab-

lished that a parole board's decision deprives a prisoner of due process with respect to [his protected liberty] interest if the board's decision is not supported by 'some evidence in the record[.]' "); *Sass,* 461 F.3d at 1128–29 (same).

treatment or control, including the use of special conditions under which the [inmate] may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 California Code of Regulations ("C.C.R.") § 2281(b-d) (2004). However, the overarching consideration in parole suitability decisions is public safety, and the factors listed in Section 2281 are non-exclusive. *In re Barker,* 151 Cal.App.4th 346, 363–64, 59 Cal.Rptr.3d 746 (2007); *In re Elkins,* 144 Cal.App.4th 475, 487, 50 Cal.Rptr.3d 503 (2006).

Here, the Board weighed the circumstances for and against granting petitioner parole and found petitioner unsuitable for parole based on a number of factors, including: (1) the nature of the commitment offense; (2) petitioner's prior criminal history; (3) petitioner's unstable social history; and (4) petitioner's most recent psychological assessment. Lodgment no. 7 at 70–74. These are all proper factors for the Board to consider under Section 2281. For example, Section 2281 requires the Board to consider whether the commitment crime was committed "in an especially heinous, atrocious or cruel manner," taking into consideration numerous subfactors. 15 C.C.R. § 2281(c)(1) (2004). Here, the Board found petitioner, who planned the offense ahead of time, took the victim away from his residence and "out onto Silverado Canyon Road" where petitioner "robbed and ... shot [the victim] in the back with a shotgun[,]"[8] acted in a very cruel, callous and dispassionate manner, and committed the offense for a very trivi-

al reason. Lodgment no. 7 at 70–74. These findings are supported by some evidence in the record having some indicia of reliability, including, for instance, the probation officer's report, *see* Lodgment no. 5, and they are sufficient to constitute "some evidence" to support the Board's decision. *Rosas,* 428 F.3d at 1232–33; *see also Morton v. Mendoza–Powers,* 2007 WL 2688850, *5–6 (E.D.Cal.) ("[T]here is some evidence to support the finding that the offense was carried out in a callous disregard for human suffering" and for a trivial motive when evidence showed petitioner ambushed and shot victim in chest so he could rob victim.); *Kobe v. Kane,* 2007 WL 1462386, *4 (N.D.Cal.) (Shooting victim at close range without provocation provides sufficient evidence demonstrating callous disregard for human suffering and murdering victim to rob him was certainly "trivial motive" compared to gravity of offense).

The Board also properly considered petitioner's "escalating pattern of criminal conduct" prior to the commitment offense, which included convictions for assault with intent to commit rape, interstate racketeering and prostitution, and "a hold from the State of Ohio for a double murder in that state, the murder of an elderly couple." Lodgment no. 7 at 71. These findings, too, constitute "some evidence" sufficient to support the Board's denial of parole to petitioner. *See* 15 C.C.R. §§ 2281(c)(2) (2004) (previous record of violence is circumstance tending to show unsuitability), 2316(a-b) (2004) (history of violent attacks and history of forcible sex-

---

**8.** Petitioner disputes shooting the victim in the back; instead, he claims he shot the victim in the chest, Petition at 15, and this claim is supported by the autopsy report, which notes the victim had a shotgun wound to the left chest and a lacerated left lung. *See* Lodgment no. 23. Indeed, at petitioner's parole hearing, the Board noted "[t]here appears to

be a discrepancy as the Orange County Coroner's office autopsy record, dated 12/14/73, [which] notes the cause of death to be exsanguination due to a lacerated left lung and shotgun wounds to the left chest." Lodgment no. 7 at 10. In any event, this discrepancy is immaterial.

ual attacks are examples of factors demonstrating ISL prisoner is unsuitable for parole); *Wray v. Clarke*, 2007 WL 2815023, *6 (E.D.Cal.) (Board properly considered inmate's "escalating pattern of criminal conduct and violence," including prior conviction for assault with intent to commit rape, in finding inmate not suitable for parole).

Furthermore, the Board found petitioner unsuitable for parole because of his "unstable social history ... includ[ing][his] prior criminality, and just in general the lifestyle that [petitioner] was apparently living at that time after his service in the military." Lodgment no. 7 at 71. More specifically, the record shows that after petitioner returned from Vietnam, he became involved in various criminal activities, including racketeering and prostitution, and was "running around with gangsters" because he wanted to be a "tough guy[.]" Lodgment no. 7 at 45. Indeed, as petitioner describes himself at that time, "[i]n 1973, ... I was a ... serious problem to people around me and to myself and to my family...." Lodgment no. 7 at 48; *see also* Petition, Exh. I at 2–3. Moreover, petitioner has gone through two marriages and three divorces since his incarceration, and he fathered a child with whom he has no contact. Lodgment no. 7 at 15–16. Thus, some evidence supports the Board's finding that petitioner has an unstable social history. *See Bair v. Folsom State Prison*, 2005 WL 2219220, *13 (E.D.Cal.) (Although "[h]aving been divorced does not necessarily demonstrate a history of unstable or tumultuous relationships[,]" inmate's history of multiple divorces, combined with his concession that his antisocial actions contributed to this pattern, provides "some

evidence" supported Board's unstable social history finding.), *adopted by*, 2005 WL 3081634 (E.D.Cal.), affirmed by, 235 Fed. Appx. 584 (9th Cir.2007).

Finally, the Board found petitioner unsuitable for parole because his most recent psychiatric evaluation found petitioner "would be a moderate risk for future violence." Lodgment no. 7 at 72. Indeed, on March 11, 2002, Ruth Cherry, Ph.D., a prison staff psychologist, evaluated petitioner and conducted psychological testing, which showed petitioner has psychopathic tendencies and is at "a moderate level of risk for future violence...." Petition, Exh. I. Dr. Cherry's report provides "some evidence" supporting the Board's determination to deny parole to petitioner. *Rosas*, 428 F.3d at 1232–33.

For the foregoing reasons, **each** of the factors set forth by the Board constitutes "some evidence" supporting the Board's decision that petitioner is unsuitable for parole; therefore, petitioner was not deprived of due process of law. *Sass*, 461 F.3d at 1129; *Rosas*, 428 F.3d at 1232. As such, the California Supreme Court's denial of Grounds One and Three was neither contrary to, nor an unreasonable application of, clearly established federal law.

### VII

 On December 19, 1978, petitioner was sentenced under the Indeterminate Sentencing Law ("ISL") to life imprisonment.[9] Lodgment no. 3 at 12:13–19; *People v. Davis*, 29 Cal.3d 814, 829, 176 Cal. Rptr. 521, 529, 633 P.2d 186 (1981). As the California Supreme Court has explained:

> Before July 1, 1977, California law provided for indeterminate sentencing.

---

9. The ISL was repealed effective July 1, 1977. *In re Roberts*, 36 Cal.4th 575, 588 n. 6, 31 Cal.Rptr.3d 458, 467 n. 6, 115 P.3d 1121 (2005). However, since petitioner committed

his offense prior to July 1, 1977, he was sentenced under the ISL. *People v. Martinez*, 88 Cal.App.3d 890, 897, 152 Cal.Rptr. 204 (1979).

Under that sentencing scheme, penal statutes specified a minimum and a maximum sentence for felonies, often ranging broadly from as little as one year in prison to imprisonment for life. A trial court would simply sentence a defendant to prison for "the term prescribed by law," while the actual length of a defendant's term, within the statutory maximum and minimum, was determined by the Adult Authority.

*People v. Jefferson,* 21 Cal.4th 86, 94–95, 86 Cal.Rptr.2d 893, 898–99, 980 P.2d 441 (1999); *In re Dannenberg,* 34 Cal.4th 1061, 1077–78, 23 Cal.Rptr.3d 417, 426, 104 P.3d 783 (2005), *cert. denied* 546 U.S. 844, 126 S.Ct. 92, 163 L.Ed.2d 109 (2005).

In Ground Two, petitioner claims his continued confinement is constitutionally excessive, cruel and unusual punishment, and violates the ex post facto clause because he has now served longer than the presumptive base term for the offense for which he was convicted.[10] There is no merit to these claims.

## A. Excessive Sentence and Violation of Ex Post Facto Clause:

▮▮▮▮ Article I of the United States Constitution provides that neither Congress nor any state shall pass an ex post facto law. U.S. Const. Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. The ex post facto clause is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *California Dep't Of Corrections v. Morales,* 514 U.S. 499, 504, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588 (1995) (citations omitted); *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990). Thus, an ex post facto law "punishes as a crime an act previously committed, which was innocent when done[,] which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed...." *Collins,* 497 U.S. at 42, 110 S.Ct. at 2719 (quoting *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925)); *Stogner v. California,* 539 U.S. 607, 612, 123 S.Ct. 2446, 2450, 156 L.Ed.2d 544 (2003). However, a change in law is not an "ex post facto violation ... if [it] does not alter 'substantial personal rights,' but merely changes 'modes of procedure which do not affect matters of substance.'" *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (citations omitted).

The petitioner appears to claim the Board violated the ex post facto clause by applying unspecified Determinate Sentencing Act ("DSL") guidelines[11] to assess his parole suitability and to continue his incarceration beyond the maximum base term applicable to ISL prisoners. *See* 15 C.C.R. § 2292(a) (2004) ("All life prisoners committed to state prison for crime(s) committed prior to July 1, 1977 shall be heard in accordance with rules in effect prior to 7/1/77...."). Here, there is absolutely no evidence DSL guidelines have

---

**10.** The "base term" stems from the circumstances underlying a conviction and is used to calculate a parole date for inmates deemed suitable for parole. 15 C.C.R. §§ 2280–84 (2004), 2401–05 (2004).

**11.** The California Supreme Court has explained DSL, as follows:

On July 1, 1977, the Legislature replaced California's indeterminate sentencing scheme with a new law, the Determinate Sentencing Act. Under the new law, most felonies specify three possible terms of imprisonment (the lower, middle, and upper terms); after weighing any aggravating and mitigating circumstances, the trial court selects one of these terms. Some particularly serious crimes, however, remain punishable by indeterminate sentences of life in prison with the possibility of parole.
*Jefferson,* 21 Cal.4th at 94–95, 86 Cal.Rptr.2d at 898–99, 980 P.2d 441.

ever been applied to petitioner. Rather, petitioner simply has never been found suitable for parole, which is a prerequisite for determining a "base term" and calculating a parole date. P.C. § 3041(b) (2004); *see also* 15 C.C.R. §§ 2281(a) (2004) (The Board "shall first determine whether a prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."), 2282(a) (2004) (The Board "shall set a base term for each life prisoner who is found suitable for parole."). In other words, absent a determination of parole suitability, the "base term" petitioner refers to has no effect on petitioner's life sentence. P.C. § 3041(b) (2004); 15 C.C.R. § 2281(a) (2004); *see also In re Stanworth*, 33 Cal.3d 176, 183, 187 Cal.Rptr. 783, 787–88, 654 P.2d 1311 (1982) ("Under both the 1976 and the current rules, a life prisoner must first be found suitable for parole before a parole date is set.").

## B. Cruel and Unusual Punishment:

 "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewinq v. California*, 538 U.S. 11, 20, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996–97, 111 S.Ct. 2680, 2702–03, 115 L.Ed.2d 836 (1991)(Kennedy, J., concurring)). However, "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Andrade*, 538 U.S. at 77, 123 S.Ct. at 1175; *see also Rummel v. Estelle*, 445

U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980) ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."). Petitioner's life sentence for his first degree murder conviction does not present an extraordinary case, and his cruel and unusual punishment claim is without merit. *See Plascencia v. Alameida*, 467 F.3d 1190, 1204 (9th Cir.2006) (50–years–to–life sentence for first degree murder with a firearm is neither extreme nor grossly disproportionate to petitioner's crime); *United States v. LaFleur*, 971 F.2d 200, 211 (9th Cir.1991) ("[A] mandatory life sentence for murder does not constitute cruel and unusual punishment," even though there is no individualized assessment of the sentence.), *cert. denied*, 507 U.S. 924, 113 S.Ct. 1292, 122 L.Ed.2d 683 (1993).

Accordingly, the California Supreme Court's denial of Ground Two was neither contrary to, nor an unreasonable application of, clearly established federal law, within the meaning of 28 U.S.C. § 2254.

## VIII

 In Ground Four, petitioner claims that, given his murder convictions in California and Ohio,[12] he was denied his due process right to be heard as a "multijurisdictional prisoner" under 15 C.C.R. § 2370, which provides, in pertinent part:

> In making a decision concerning parole for multijurisdiction prisoners the hearing panel shall make one of the following decisions considering the factors enumerated:
>
> (1) To discharge the California sentence at the minimum eligible parole

---

**12.** On April 25, 1980, in Jefferson County (Ohio) Court of Common Pleas case no. 77–CR–336, petitioner pleaded no contest to one count of second degree murder in violation of Ohio Rev.Code § 2901.05, and he was sentenced to 15 years to life for that crime, with the trial court ordering petitioner transported to Ohio upon his release from California custody "to serve the remainder of his sentence as provided by law." Lodgment no. 16.

date and waive parole when the crime for which the prisoner has been committed to the other jurisdiction is more serious than the California crime or when the prisoner has stronger family, social or economic ties to the other jurisdiction than he does to California.

(2) To set the California term as provided in this Chapter if the prisoner would serve substantially more time for the California crimes than for the crimes committed in the other jurisdiction, the prisoner has stronger social, family or economic ties to California or the panel determines that discharge would be inappropriate.

15 C.C.R. § 2370(d) (2004).

The Orange County Superior Court denied this claim, stating:

Petitioner's argument that he is a multi-jurisdictional prisoner is not supported by any relevant documentation and his own procedural statement is not at all clear. The [Board] stated at the hearing that it acknowledged his "multijurisdictional prisoner" argument, but it had been addressed in the 2002 hearing and would not be addressed again. The [Board] referred to pages 7 and 8 of the 2002 transcript. Petitioner provides a portion of the 2002 transcript, but fails to provide pages 7 and 8 which address

this issue. The Petitioner fails to carry his burden of demonstrating the factual allegations that serve as the basis for his request for relief.

Lodgment no. 10 at 3 (citation omitted).[13]

In conducting habeas review, a federal court is limited to deciding whether a conviction violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Engle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *see also Dugger v. Adams,* 489 U.S. 401, 409, 109 S.Ct. 1211, 1216–17, 103 L.Ed.2d 435 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution."). Nor may a petitioner "transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day,* 110 F.3d 1380, 1389 (9th Cir.), *cert. denied,* 522 U.S. 881, 118 S.Ct. 208, 139 L.Ed.2d 144 (1997). Since Ground Four challenges compliance with a state regulation, this claim is not cognizable on habeas review.

## IX

▮▮▮ "[T]he Due Process Clause clearly requires a 'fair trial in a fair tribu-

---

**13.** The Board found petitioner was not a "multijurisdiction prisoner," stating:

I'm going to incorporate by reference from the prior transcript [of the 2002 parole suitability hearing], pages seven and eight, and just note for the record that it's my understanding from reading Title XV correctly that multi-jurisdictional that you're being housed, that you essentially committed the same crime in two different states and that's not the case here. We have two separate crimes, one in Ohio, one in California. . . .
Lodgment no. 7 at 8:11–20. In 2002, the Board more specifically explained:

[T]he Ohio case does not qualify as multijurisdictional. What—Multijurisdictional is basically if you're housed or if you're some sort of a custody issue for the same crime in two different states. You have to serve your time here in California first. Then once you're released, you serve your time in Ohio. So it's not—They don't have custody over you while you're serving your time for the case you're convicted for in California. We don't have any custody issues over you when you're serving [t]he time for the crime you committed or were found guilty of in Ohio. Therefore, there's no multijurisdictional issue here whatsoever.
Lodgment no. 22 at 7:26–8:12.

nal[.]'" *Bracy v. Gramley,* 520 U.S. 899, 904–05, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997) (quoting *Withrow v. Larkin,* 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975)); *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); *see also O'Bremski v. Maass,* 915 F.2d 418, 422 (9th Cir.1990) (inmate entitled to have parole release date considered by tribunal that was free from bias or prejudice), *cert. denied,* 498 U.S. 1096, 111 S.Ct. 986, 112 L.Ed.2d 1070 (1991). "Fairness, of course, requires an absence of actual bias. ..." *In re Murchison,* 349 U.S. at 136, 75 S.Ct. at 625. "Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.'" *Withrow,* 421 U.S. at 47, 95 S.Ct. at 1464 (quoting *In re Murchison,* 349 U.S. at 136, 75 S.Ct. at 625).

▮ In Ground Five, petitioner broadly claims the panel that conducted his parole suitability hearing was biased. However, petitioner has presented absolutely no evidence demonstrating bias;[14] therefore, this claim is conclusory and manifestly insufficient to warrant habeas corpus relief. *Jones v. Gomez,* 66 F.3d 199, 204–05 & n. 1 (9th Cir.1995), *cert. denied,* 517 U.S. 1143, 116 S.Ct. 1437, 134 L.Ed.2d 559 (1996); *James v. Borg,* 24 F.3d 20, 26 (9th Cir.), *cert. denied,* 513 U.S. 935, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994).

### RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

Oct. 24, 2007.

---

**14.** Indeed, when questioned at the start of the parole suitability hearing, both petitioner and his attorney specifically stated they had no objections to the panel. Lodgment no. 7 at 6.