Michael PADDOCK, aka Michael
Davis, Petitioner,

v.

Kathy MENDOZA–POWERS,
Respondent.

Case No. SACV 07–1247–JVS(RC).

United States District Court,
C.D. California.

Dec. 2, 2009.

Michael Paddock, Avenal, CA, pro se.

Jennifer L. Heinisch, Office of the Attorney General, Los Angeles, CA, for Respondent.

## JUDGMENT

JAMES V. SELNA, District Judge.

IT IS ADJUDGED that Judgment be entered denying the petition and dismissing the action with prejudice.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judgment's Report and Recommendation and Judgment by the United State mail on petitioner.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable James V. Selna, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On March 27, 1987, in Orange County Superior Court case no. C62387, a jury convicted petitioner Michael Paddock, aka Michael Davis, of first degree murder in violation of California Penal Code ("P.C.") § 187(a) and found it to be true that petitioner was vicariously armed.[1] Lodgment

---

1. The California Court of Appeal set forth the facts and circumstances underlying petitioner's conviction, as follows:

    At approximately 2:00 a.m. on July 31, 1986, Long Thanh Nguyen and his wife heard the beeper connected to his car's silent alarm. Armed with a handgun, Mr. Nguyen walked outside to the carport driveway. His wife was watching from their apartment window. She heard shots and saw him fall. Holding his chest, he got back up and called to her to phone a doc-

nos. 1–2. On June 23, 1987, petitioner was sentenced to 25 years to life imprisonment. *Id.* The petitioner appealed his conviction to the California Court of Appeal, which affirmed the judgment in an unpublished opinion filed January 30, 1989. Petition, Exh. J. The petitioner sought review from the California Supreme Court, which denied his petition. Petition at 3.

## II

On July 25, 2006, petitioner had his third parole suitability hearing, Petition, Exh. A; Lodgment no. 4, at which time a panel of the California Board of Parole Hearings ("Board") denied petitioner parole for one year, finding he is "not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." Lodgment no. 4 at 76. In reaching its decision, the Board made the following findings:

> [W]e start[ ] with the commitment offense, and the panel note[s] that [1] the offense was carried out in an especially cruel and callous manner when the victim, Long Nguyen, was shot and killed defending his property after responding to a vehicle alarm. The offense was carried out in a very dispassionate and calculated manner such as an execution style murder in that two weapons were used, a .38 caliber revolver and a .22 caliber rifle. The victim was shot multiple times, and the indication in the rec-

ord is that the victim—excuse me, [petitioner's] crime partners were lying in wait for Mr. Nguyen, and he was lured out of the house again by the activation of the automobile alarm. The offense was carried out in a manner that demonstrates exceptionally callous disregard for human suffering in that the victim was left at the scene. He managed to get himself to the doorway of his home where he died in front of his wife and his three-year-old and five-year-old child[ren]. Motive for the crime is very inexplicable. It appears from the record that it was retaliation for the victim's previous attempt to protect his property by firing a weapon at the perpetrators in what looked like to be an automobile burglary. . . . [2] The panel note[s] that [petitioner] did have a prior arrest as a juvenile and that [petitioner] failed from society's previous attempts to correct [his] criminality, and that attempt included the ten-day placement in the juvenile probation period. And the panel also note[s] that [petitioner] w[as] on probation at the time of the commitment offense. With respect to [petitioner's] prior criminality, it was a [P.C. § ] 496—it was possession of stolen property, it wasn't a person crime. The panel also note[s] that [petitioner] did drop out of school prior to graduating. [3] So far as [petitioner's] institutional behavior, the panel note[s] that in . . . the transcript . . . from your last Board [hear-

---

tor. He entered the apartment and collapsed on the floor, bleeding from the chest and vomiting blood. He had been shot in the chest and foot, and died from blood loss resulting from the chest wound. [¶] About a week earlier, the beeper had sounded. Nguyen had rushed out with his gun, discovered someone standing by the car and scared the person away. [¶] [Petitioner], then 16 years old, was arrested a week after the murder. In a taped confession, he stated that he and Rogelio Monjaras had attempted to steal Nguyen's car stereo the

week before the murder. Nguyen had shot at them. In retaliation, he, Monjaras and Marlon Gray decided to shoot Nguyen. According to [petitioner], it was Gray and Monjaras who did the actual shooting— Gray with a .38 caliber gun and Monjaras with a .22 caliber rifle. [Petitioner] insisted he himself was unarmed and his sole involvement was to shake Nguyen's car to activate the alarm. He acknowledged he owned a .22 caliber rifle, but denied having it with him that night.
Petition, Exh. J.

ing], that there was a recommendation that to the degree that it's available and possible that [petitioner] either attend an Anger Management or a CALM program. And this panel is going to encourage [petitioner] to do the same thing again to the extent that the program is available. To the extent that the program is not available, we're going to encourage [petitioner] to do some self-study in the area of anger management. . . . [4] To [petitioner's] credit, we note[ ] that [petitioner] ha[s] no 115s, and again, I'll reiterate, that's to [petitioner's] credit, sir. [However,] [petitioner] do[es] have a 128, the only 128 being on October 5 of 1999, and this is for violation of a lock-up procedure. [5] The panel . . . considered the Psychological Report that was prepared in December of 2001 by Dr. Giantonio. And the panel note[s] that it's favorable, but the fact that it's five years old makes it of limited value. This panel and future panels would need a report that has a more current risk assessment, and to that, we've ordered that a new psychological exam be completed before [petitioner's] next hearing. There's no need for [petitioner] to come back for another hearing with a five-year-old—it's five years old right now. [6] As far as [petitioner's] parole plans, [petitioner] do[es] have viable residential plans in the county of last residence, and that's in Santa Ana with [petitioner]'s family. [7] And the panel note[s] that [petitioner has] marketable skills. [Petitioner's] got some very good solid work chronos that [he's] received from the people here in the PIA. We would encourage [petitioner] to get [his] letters updated, and we always encourage [inmates] to start the process to get them updated sooner than [they] think [they] need to, because it takes a long time for things to make its way through here. So far as the [P.C. § ] 3042 notices, the District Attorney from Orange County was here, a representative indicated an opposition to the granting of a date. We do want to commend [petitioner] for [his] work reports, and again, the panel noted and considered the fact that [petitioner is] a good worker, [petitioner] get[s] along well, and it appears that [petitioner] need[s] very minimal supervision, which I think is an asset that will serve [petitioner] well when [he] get[s][his] date to get out of here. We're denying [petitioner] for one year. I think the previous panel talked to [petitioner] a little bit about the matrix, and [petitioner] said [he] understood what that's all about. What we want [petitioner] to do is make sure that [he] stay[s] disciplinary-free, and I'm even going to put on the record, that includes 128s. We know that those are called counseling chronos, but they're indicators of behavior, and there's no need with all the progress and good work that [petitioner's] done in that area to go out and get . . . anything in that neighborhood. Certainly no 115s, but no more 128s either, because all those things make [petitioner] a better candidate, and that's the only reason we're reaffirming that. Again, the self-help issue, as the last panel indicated, the programs aren't available here—and we realize often times they're not—don't let that be a restriction. . . . [Petitioner should go] out and get creative and utilize [his] own skills in doing the independent study with verification, again, as to what [petitioner] achieved as a result of doing it. And with that, I've already indicated that we've ordered [petitioner] a new psych[ological evaluation]. [¶] . . . The paralegal stuff, if that interests [petitioner], complete it. That's another real strong decent paying job skill. And with [petitioner's] background—fortunately, with [petitioner]'s background,

that's actually an asset to [petitioner].... [¶] ... I would continue to encourage [petitioner] to try to utilize the tribal assets, the Tribal Nations in California have achieved a fair degree of significance and prominence now as a result of something completely unassociated with this Indian Center, but don't lose sight of that as being a very significant resource....

Lodgment no. 4 at 76–82 (bracketed numbers inserted).

On or about April 9, 2007, petitioner filed a habeas corpus petition in the Orange County Superior Court challenging the Board's decision, Petition at 4, and on May 9, 2007, the Superior Court denied the petition, finding the Board:

noted the crime was cruel and callous and was carried out in a very dispassionate and calculated manner "such as an execution style murder." It noted the victim was shot multiple times with two different weapons, and there was some indication of lying-in-wait on the part of the perpetrators. The [Board] also noted Petitioner had a juvenile record and had dropped out of school. He had one counseling "chrono." ... The [Board] acknowledged that Petitioner's psychological report was favorable, but it was five years old. It acknowledged he had no disciplinary problems in prison, and he had viable parole plans. Nevertheless, the [Board] concluded it would not grant parole. It requested an updated psychological report for the next hearing.

\*　　\*　　\*

Here, the [Board] pointed out various circumstances of the offense: it was first degree murder, and was committed during what was apparently a planned, coordinated car theft. The victim was shot execution-style, multiple times.... [I]f the [Board] "determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual," it need not set a parole date. Petitioner therefore fails to show that the [Board] abused its discretion in denying parole. The petition is denied on that basis.

Lodgment no. 5 at 2–3 (citations omitted).

On or about May 24, 2007, petitioner filed a habeas corpus petition in the California Court of Appeal, which denied the petition on June 28, 2007. Lodgment nos. 6–7. Finally, on July 25, 2007, petitioner filed a habeas corpus petition in the California Supreme Court, which denied the petition on September 25, 2007. Lodgment nos. 8–9.

**III**

On October 23, 2007, petitioner filed the pending petition for writ of habeas corpus challenging the Board's 2006 decision finding him unsuitable for parole, and on January 23, 2008, respondent answered the petition. On March 24, 2008, petitioner filed his reply.

The petitioner raises the following claims in his petition:

Ground One—"Petitioner is being held in custody beyond the expiration of any lawfully calculated release date in violation of state and federal due process and provisions prohibiting cruel or unusual punishment"; and

Ground Two—"Denial of parole for the third time based on the commitment offense and prior conduct over 20 years past violates due process."

**DISCUSSION**

**IV**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circum-

scribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume a state court's determination of factual issues is correct, and petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The California Supreme Court reached the merits of petitioner's claims when it denied his habeas corpus petition without comment or citation to authority. *Gaston v. Palmer,* 417 F.3d 1030, 1038 (9th Cir. 2005), *amended by,* 447 F.3d 1165 (9th Cir.2006), *cert. denied,* 549 U.S. 1134, 127 S.Ct. 979, 166 L.Ed.2d 742 (2007); *Hunter v. Aispuro,* 982 F.2d 344, 348 (9th Cir. 1992), *cert. denied,* 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Medley v. Runnels,* 506 F.3d 857, 862 (9th Cir.2007) (en banc), *cert. denied,* — U.S. —, 128 S.Ct. 1878, 170 L.Ed.2d 754 (2008). Thus, in addressing petitioner's claims, this Court will consider the reasoning of the Los Angeles County Superior Court, which denied the claims on the merits. *Stenson v. Lambert,* 504 F.3d 873, 884 (9th Cir.2007), *cert. denied,* — U.S. —, 129 S.Ct. 247, 172 L.Ed.2d 188 (2008); *Bonner v. Carey,* 425 F.3d 1145, 1148 n. 13 (9th Cir.2005), *amended by,* 439 F.3d 993 (9th Cir.), *cert. denied,* 549 U.S. 856, 127 S.Ct. 132, 166 L.Ed.2d 97 (2006).

## V

■ In Ground One, petitioner claims he is being held in custody beyond the expiration of any lawfully calculated release date in violation of due process and the prohibition against cruel and unusual punishment because respondent improperly calculated petitioner's "base term." Memorandum in Support of Habeas Corpus Petition at 9. There is no merit to this claim.

California parole guidelines require setting a "base term for each life prisoner who is found suitable for parole." 15 California Code of Regulations ("C.C.R.") § 2403(a). The "base term" is "established by utilizing the appropriate matrix of base terms" provided in 15 C.C.R. § 2403. 15 C.C.R. § 2403(a). "However, petitioner has not been found suitable for parole, which is a prerequisite for the determination of a 'base term' and the calculation of a parole date." *Murphy v. Espinoza,* 401 F.Supp.2d 1048, 1055 (C.D.Cal. 2005); *see also Irons v. Carey,* 505 F.3d 846, 851 n. 3 (9th Cir.2007) (A " 'determination of an individual inmate's *suitability* for parole under *section 3041, subdivision (b)* must precede any effort to set a parole release date under the uniform-term principles of *section 3041, subdivision (a).*' ")

(quoting *In re Dannenberg,* 34 Cal.4th 1061, 1079–80, 23 Cal.Rptr.3d 417, 428, 104 P.3d 783 (2005), *cert. denied,* 546 U.S. 844, 126 S.Ct. 92, 163 L.Ed.2d 109 (2005)); P.C. § 3041(b) (The Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting."); 15 C.C.R. § 2402(a) (The Board "shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the [Board] the prisoner will pose an unreasonable risk of danger to society if released from prison."). "In other words, absent a determination of parole suitability by the [Board], there is no 'base term.'" *Murphy,* 401 F.Supp.2d at 1055; P.C. § 3041(b); 15 C.C.R. 2403(a). Thus, petitioner remains subject to an indeterminate life sentence, *see Irons,* 505 F.3d at 851 ("Under California law, prisoners serving an indeterminate sentence for … murder 'may serve up to life in prison, but [ ] become eligible for parole consideration after serving minimum terms of confinement.'" (quoting *Dannenberg,* 34 Cal.4th at 1078, 23 Cal.Rptr.3d at 426, 104 P.3d 783)), and "petitioner's ongoing detention does not deprive petitioner of due process of law[.]" *Murphy,* 401 F.Supp.2d at 1055 (citations omitted); P.C. § 3041(b); 15 C.C.R. § 2403(a).

■■■■ "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California,* 538 U.S. 11, 20, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003) (quoting *Harmelin v. Michigan,* 501 U.S. 957, 996–97, 111 S.Ct. 2680, 2702–03, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring)); *see also Andrade,* 538 U.S. at 72, 123 S.Ct. at 1173 (under "clearly established" Eighth Amendment jurisprudence, "[a] gross disproportionality principle is applicable to sentences for terms of years"). However, "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Andrade,* 538 U.S. at 77, 123 S.Ct. at 1175; *see also Rummel v. Estelle,* 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980) ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."). Here, petitioner's continued detention on his first degree murder conviction does not constitute an "extraordinary case" or cruel and unusual punishment. *Andrade,* 538 U.S. at 76, 123 S.Ct. at 1175; *Ewing,* 538 U.S. at 30–31, 123 S.Ct. at 1190; *see also Plascencia v. Alameida,* 467 F.3d 1190, 1204 (9th Cir. 2006) (50 years to life for first degree murder and using firearm is not cruel and unusual punishment); *United States v. La-Fleur,* 971 F.2d 200, 211 (9th Cir.1991) ("[I]t is clear that a mandatory life sentence for murder does not constitute cruel and unusual punishment."), *cert. denied,* 507 U.S. 924, 113 S.Ct. 1292, 122 L.Ed.2d 683 (1993); *Tidwell v. Marshall,* 526 F.Supp.2d 1031, 1044 (C.D.Cal.2007) ("Petitioner's life sentence for his first degree murder conviction does not present an extraordinary case, and his cruel and unusual punishment claim is without merit.").

Accordingly, the California Supreme Court's denial of Ground One was neither contrary to, nor an unreasonable application of, clearly established federal law.

## VI

■■■■ The Fourteenth Amendment's due process clause provides that a person may not be deprived of life, liberty, or property without due process of law. The Supreme Court "examine[s] procedural due process

questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (citations omitted); *Sass v. Cal. Bd. of Prison Terms,* 461 F.3d 1123, 1127 (9th Cir.2006). "Under the 'clearly established' framework of *Greenholtz* [2] and *Allen,*[3] ... California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan,* 306 F.3d 895, 902 (9th Cir.2002) (footnotes added); *Sass,* 461 F.3d at 1127–28; *Irons,* 505 F.3d at 850 ("California Penal Code section 3041 vests [petitioner] and all other California prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause.").

■ The Supreme Court in *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), "clearly established that a parole board's decision deprives a prisoner of due process with respect to [his liberty] interest [in parole] if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'" *Irons,* 505 F.3d at 851 (citations omitted); *Hill,* 472 U.S. at 455–57, 105 S.Ct. at 2774–75. When this Court assesses "whether a state parole board's suitability determination was supported by some evidence in a habeas case,

our analysis is framed by the statutes and regulations governing parole suitability determinations in [California]." *Irons,* 505 F.3d at 851; *Biggs v. Terhune,* 334 F.3d 910, 915 (9th Cir.2003). Thus, this Court "must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' in [petitioner's] case constituted an unreasonable application of the 'some evidence' principle articulated in *Hill* [.]" *Irons,* 505 F.3d at 851.

■ Under California law, an inmate " 'shall be found unsuitable for parole and denied parole if, in the judgment of the [Board], the prisoner will pose an unreasonable risk of danger to society if released from prison.' " *Id.* (citations and footnote omitted). Factors the Board should consider include the inmate's:

social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the [inmate] may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 C.C.R. § 2402(b-d).[4] However, the overarching consideration in parole suitabili-

---

**2.** *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

**3.** *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987).

**4.** Circumstances tending to establish unsuitability for parole are that the inmate:

(1) committed the offense in an especially heinous, atrocious or cruel manner; (2) possesses a previous record of violence; (3) has an unstable social history; (4) previously has sexually assaulted another individual in a sadistic manner; (5) has a lengthy history of severe mental problems related to

ty decisions is public safety. *Irons*, 505 F.3d at 851; *see also In re Lawrence*, 44 Cal.4th 1181, 1212, 82 Cal.Rptr.3d 169, 190, 190 P.3d 535 (2008) ("[T]he relevant inquiry is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely some evidence confirms the existence of certain factual findings.");[5] *In re Shaputis*, 44 Cal.4th 1241, 1254, 82 Cal.Rptr.3d 213, 222–23, 190 P.3d 573 (2008) ("[T]he proper articulation of the standard of review is whether there exists 'some evidence' that an inmate poses a current threat to public safety, rather than merely some evidence of the existence of a statutory unsuitability factor.").

■ Here, as discussed above, the Los Angeles County Superior Court found some evidence supports the Board's decision, and this finding is not an unreasonable application of *Hill*. To the contrary, the Board weighed the circumstances for and against granting petitioner parole and found petitioner unsuitable for parole based on a number of factors, including: (1) the nature of the commitment offense; (2) petitioner's juvenile history, which included being on probation at the time of the offense and dropping out of school before graduating; (3) petitioner's lack of

anger management or self-study classes; (4) a prison counseling chrono; and (5) lack of a recent psychological report.

■ The commitment offense may be a factor tending to show parole unsuitability if "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner." 15 C.C.R. § 2402(c)(1). Factors supporting a finding that the inmate committed the offense in an especially heinous, atrocious, or cruel manner include the following:

(A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled, or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense.

*Rosenkrantz*, 29 Cal.4th at 653–54 n. 11, 128 Cal.Rptr.2d at 137 n. 11, 59 P.3d 174; 15 C.C.R. § 2402(c)(1)(a-e). Nevertheless, "there are few, if any, murders that could *not* be characterized as either particularly aggravated, or as involving some act be-

---

the offense; and (6) has engaged in serious misconduct while in prison.

*In re Rosenkrantz*, 29 Cal.4th 616, 653–54, 128 Cal.Rptr.2d 104, 137, 59 P.3d 174 (2002) (footnote omitted), *cert. denied*, 538 U.S. 980, 123 S.Ct. 1808, 155 L.Ed.2d 669 (2003); 15 C.C.R. § 2402(c). On the other hand, circumstances tending to establish suitability for parole are that the inmate:

(1) does not possess a record of violent crime committed while a juvenile; (2) has a stable social history; (3) has shown signs of remorse; (4) committed the crime as the result of significant stress in his life, especially if the stress has built over a long period of time; (5) committed the criminal offense as a result of battered woman syn-

drome; (6) lacks any significant history of violent crime; (7) is of an age that reduces the probability of recidivism; (8) has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) has engaged in institutional activities that indicate an enhanced ability to function within the law upon release.

*Rosenkrantz*, 29 Cal.4th at 654, 128 Cal. Rptr.2d at 138, 59 P.3d 174; 15 C.C.R. § 2402(d).

**5.** "[U]nder *Irons*, *Lawrence* governs the application of the 'some evidence' standard." *Milot v. Haws*, 628 F.Supp.2d 1152, 1155 (C.D.Cal.2009).

yond the minimum required for conviction of the offense." *Lawrence,* 44 Cal.4th at 1218, 82 Cal.Rptr.3d at 196, 190 P.3d 535 (emphasis in original); *In re Rozzo,* 172 Cal.App.4th 40, 53, 91 Cal.Rptr.3d 85 (2009). Thus, "the circumstances of the commitment offense (or any other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public." *Lawrence,* 44 Cal.4th at 1212, 82 Cal. Rptr.3d at 190, 190 P.3d 535; *In re Rico,* 171 Cal.App.4th 659, 673, 89 Cal.Rptr.3d 866 (2009); *Milot,* 628 F.Supp.2d at 1167; *see also Irons,* 505 F.3d at 851–52 ("A prisoner's commitment offense may constitute a circumstance tending to show that a prisoner is presently too dangerous to be found suitable for parole, but the denial of parole may be predicated on a prisoner's commitment offense only where the Board can 'point to factors beyond the minimum elements of the crime for which the inmate was committed' that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released." (quoting *Dannenberg,* 34 Cal.4th at 1071, 23 Cal.Rptr.3d at 421, 104 P.3d 783)).

Here, the Board found petitioner carried out the offense "in an exceptionally cruel and callous manner" or "in a very dispassionate and calculated manner" wherein the victim "was shot and killed defending his property ... in ... an execution[-]style murder in that two weapons were used[,] ... [t]he victim was shot multiple times, and [petitioner's] crime partners were lying in wait for [the victim, who] was lured out of the house ... by the activation of [his] automobile alarm." Lodgment no. 4 at 76–78. Petitioner's crime, which involved petitioner and his cohorts lying in wait and ambushing the victim, "was a cold blooded execution-style murder that exceeded the minimum elements necessary for a conviction for first degree murder[,]"

*Fransway v. Kane,* 2008 WL 1995114, \*13 (N.D.Cal.); *see also Otte v. Mendoza–Powers,* 2008 WL 351798, \*5 (E.D.Cal.) (Petitioner and his two crime partners' "cold blooded execution-style murder of the victim definitely exceeds the minimum elements necessary for a conviction of first degree murder" when petitioner and his two crime partners planned the ambush of the murder victim, and "[p]etitioner callously lured the victim to the crime scene ..., where his two codefendants were lying in wait and shot ... [and] kill[ed] the victim."), *adopted by,* 2008 WL 880565 (E.D.Cal.), constitutes "some evidence" that petitioner "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." Lodgment no. 4 at 76; *Shaputis,* 44 Cal.4th at 1259, 82 Cal.Rptr.3d at 227, 190 P.3d 573. Even if this were the only evidence the Board had supporting its determination to deny petitioner parole, petitioner would not have been deprived of due process of the law by the Board because petitioner "had not served the minimum number of years to which [he] had been sentenced at the time of the challenged parole denial by the Board." *Irons,* 505 F.3d at 853–54; *Sass,* 461 F.3d at 1129.

The Board, however, also considered several factors in addition to the commitment offense in determining petitioner was unsuitable for parole, including petitioner's juvenile history. This history included petitioner's conviction of receiving stolen property, petitioner being on probation at the time of the commitment offense, and petitioner's admissions that he had also committed some vehicle burglaries and had attempted to burglarize the murder victim's vehicle. Lodgment no. 4 at 52–53; *see Hunt v. Finn,* 2009 WL 1459173, \*8 (E.D.Cal.) (Petitioner's prior criminal history, including a juvenile burglary conviction "and grants of probation provide some evidence to support the Board's finding that petitioner has a pattern of criminal

conduct and has failed to profit from society's previous attempts to correct his criminality."). Additionally, the Board considered that petitioner had dropped out of school in the ninth grade, Lodgment no. 4 at 51–52, 78, which indicates an unstable social history. *Torricellas v. Davison,* 519 F.Supp.2d 1040, 1055 (C.D.Cal.2007); *Peterson v. Kane,* 2009 WL 193756, *6 (N.D.Cal.). Apart from the commitment offense, petitioner's juvenile history and unstable social history also constitute "some evidence" supporting the Board's decision to deny petitioner parole.

The Board had previously recommended to petitioner that he participate in anger management programs, Lodgment no. 4 at 78–79; Petition, Exhs. B–C, but petitioner did not do so. Thus, the Board again recommended petitioner participate in available anger management classes or anger management self-study if no program was available, Lodgment no. 4 at 78–79, and a reasonable inference may be drawn from this recommendation that the Board found petitioner's lack of anger management programs or self-study to be a factor showing petitioner remained a danger to the public and was unsuitable for parole. Given petitioner's commitment offense stemmed from his and his cohorts' desire to retaliate against the victim, with whom they were angry for thwarting the burglary of his vehicle, it was certainly reasonable for the Board to identify anger management as an important aspect of petitioner's rehabilitation. Thus, this finding also constitutes "some evidence" to support the Board's determination to deny petitioner parole. *Torricellas,* 519 F.Supp.2d at 1056; *Lujao v. Curry,* 2009 WL 1176292, *5 (N.D.Cal.); *see also Olivas v. Muntz,* 2009 WL 2848670, *11 (C.D.Cal.) ("[T]he Board also

properly considered the benefit of additional self-help and educational/vocational programming.").

For the foregoing reasons, there is "some evidence" supporting the Board's determination that petitioner was unsuitable for parole,[6] and petitioner was not deprived of due process of law. *Irons,* 505 F.3d at 853–54; *Sass,* 461 F.3d at 1129; *Rosas v. Nielsen,* 428 F.3d 1229, 1232–33 (9th Cir.2005) (per curiam). Accordingly, the California Supreme Court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established law.

**RECOMMENDATION**

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

---

**6.** In light of the factors discussed herein, there is no need for the Court to also discuss the other reasons the Board cited, and the Superior Court addressed, to deny petitioner parole.